THOMAS E. HOGG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17903.   Promulgated September 26, 1949.

*Milton H. West, Jr., Esq.,* and *Harry R. Jones, Esq.,* for the petitioner.

*Allen P. Aiken, Esq.,* for the respondent.

OPINION.

JOHNSON, *Judge*: Petitioner seeks to deduct the $14,400 paid to his wife under the agreement, invoking section 23 (u), Internal Revenue Code, which authorizes the husband to deduct amounts includible under section 22 (k) in the gross income of the wife. Section 22 (k) provides:

(k) ALIMONY, ETC., INCOME—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments * * * received subsequent to such decree in discharge of, * * * a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife. * * *

Petitioner's wife was granted a divorce on May 15, 1939, by a decree which made no reference to alimony or support. Texas law fails to impose the duty of support on a divorced husband, but merely authorizes the court which renders the divorce decree to make a proper division of the spouses' property. See arts. 4637-8, Vernon's Texas Civil Statutes; *Pearce* v. *Commissioner*, 315 U. S. 543; *Ernestine Mitchell*, 38 B. T. A. 1336; *Martin* v. *Martin*, 17 S. W. (2d) 789; *Phillips* v. *Phillips*, 203 S. W. 77. In some instances, however, a Texas court has worded the divorce decree to direct the husband to make specified monthly payments for the wife's support in settlement of the wife's property rights. *Keton* v. *Clark*, 67 S. W. (2d) 437; *Scott* v. *Fort Worth Bank*, 125 S. W. (2d) 356.

Recognizing the effect of the Texas statute, petitioner argues that the lack of a support obligation imposed by law after divorce is not detrimental to his contention, because, in adding sections 22 (k) and 23 (u) as amendments to the code by section 120 of the Revenue Act of 1942, Congress avowed an intent, expressed in House Report No. 2333, 77th Cong., 1st sess., to treat alimony or an allowance for support as income of the receiving spouse and to relieve the other spouse from tax thereon:

* * * In addition, the amended sections will produce uniformity in the treatment of amounts paid in the nature of or in lieu of alimony regardless of variance in the laws of different States concerning the existence and continuance of an obligation to pay alimony.

Petitioner cites *Tuckie G. Hesse*, 7 T. C. 700, as an instance in which this Court has already held a husband's payments to a divorced wife pursuant to agreement to be "in the nature of alimony" and "in lieu of alimony" for the purposes of section 22 (k), even though Pennsylvania law, under which the divorce was granted, and the decree itself made no provision for alimony. The Court based its decision on the view that the husband made the enforceable agreement to pay the amounts in controversy:

* * * in connection with a contemplated divorce, and * * * to take care of the lack of any provision under law which would require the payment of alimony to petitioner if she sued for and obtained an absolute divorce.

The evidence here indicates that petitioner's payments were made pursuant to an enforceable agreement; that the agreement's terms were fully understood before the wife petitioned for divorce, and were incorporated in written contracts or deeds immediately after the decree was granted. By the payments petitioner discharged a legal obligation incurred by him incident to the divorce. Cf. *Frank K. DuBane*, 10 T. C. 992; *Benjamin B. Cox*, 10 T. C. 955; *Robert Wood Johnson*, 10 T. C. 647. But to deduct the payments, he must show further that the obligation was incurred "because of the marital or family relationship," section 22 (k). He argues that the parties intended the payments to be "simply a provision for support," and hence the discharge of a marital obligation in the nature of alimony, and to support that view, introduced the testimony of William B. Ferguson, an attorney employed by the Hogg family enterprises, who represented him in negotiations with the wife's attorney. Ferguson stated that the discussions "revolved primarily around how much that monthly payment would be," and agreement was reached on $1,200 because petitioner had given his wife that amount for the past few years and would give no more.

Petitioner contends, further, that the agreement must have been intended for support because there was not any community property to divide, and he devotes the major part of his evidence and brief to efforts at establishing the separate character of all his assets at the time of the divorce. This evidence is not conclusive. The two schedules prepared by Ferguson from partnership books purport to show only petitioner's shares of income from the inherited oil lands and from other assets separately, and by charging aggregate withdrawals over the years against net community income, Ferguson arrived at a very small figure remaining. Petitioner asserts that even this figure was absorbed by losses. These income schedules were the only figures considered during divorce negotiations, but petitioner introduced at the hearing an accountant's computation, recently prepared from partnership books, which indicates a deficit in community

property as of May 31, 1939. In this computation no effort was made to trace any specific asset and all petitioner's withdrawals were charged against income credited to the community.

Respondent stresses that by the agreement petitioner's wife acquired in addition to the annuity, a furnished home, two automobiles, over $5,000 cash, a claim of $10,000 for her estate, a contingent annuity for her mother, and a $3,000 claim for the mother's estate. The listed items, he argues, were not for support, but were consideration passed in a property settlement that also included the monthly payments. He points to the wife's allegation in her divorce petition that petitioner and she had "agreed upon a settlement of their property rights"; to the implementing contract for the monthly payments, which recited that it was "executed in settlement of their property rights"; and, as confirming this character, to the wife's separate and simultaneous deed to petitioner of all her claims to or rights, title, or interest in property in his name or possession or held for his account by the two partnerships, his brother and sister, and numerous named corporations and individuals.

After a careful study of the record and the parties' contentions we are convinced that the parties' counsel were conscious of the necessity for making a property settlement and that the agreement reached and carried out divested the wife of all interest in any community or separate property of petitioner except that which was conveyed to her pursuant to the agreement's terms. But it seems obvious that there was no calculation of the amount of property to which she might be entitled and that such amount was not a factor considered in arriving at the settlement terms. When the negotiations began the wife had a claim to support which was legally enforceable and which petitioner had been discharging for some time by the payment of $1,200 a month. As we construe the negotiations and the resulting agreement, the primary consideration in the parties' minds was not community property division, but petitioner's willingness to continue the monthly payments which he had been making for support.

It is of material significance in this connection that the wife's right to these payments was "nontransferable and nonassignable" and was put beyond execution and judicial sale, "being intended to provide for the current annual support of Mrs. Marie Willett Hogg." As the parties had reached this agreement before the petition for divorce was even filed, the wife obviously relinquished a present legal right to support in exchange for a future contractual right to support. And the husband incurred this contractual obligation because of the marital relationship and "to take care of the lack of any provision under law which would require the payment of alimony." *Tuckie G. Hesse, supra.* Here, as in the *Hesse* case, state law imposed no duty of sup-

port on the husband after divorce, but sections 22 (k) and 23 (u) were added to the code to produce uniformity in the tax treatment of amounts paid in lieu of alimony regardless of variance in state laws "concerning the existence and continuance of an obligation to pay alimony." H. Rept. No. 2333, *supra.* We are of opinion, therefore, that the monthly payments here in controversy were received by the wife in discharge of a legal obligation which was incurred by petitioner because of the marital relationship and under a written instrument incident to the divorce. Such payments are deductible by him under section 23 (u).

In so holding, we do not disregard or deny effect to the whole agreement as resulting also in a property settlement. The transfer of the furnished home, the automobiles, the cash, the undertaking to pay $10,000 to the wife's estate, and the contingent benefits for the wife's mother may properly be deemed the consideration paid for the wife's transfer of any interest which she might have had in property held in the husband's name or possession or for him. But none of these items is here in controversy. And, while the contract does not make an express distinction between such items and the obligation for monthly payments, we feel that the continuation of petitioner's prior support plan by means of such payments and the avowed intent to provide by them support for the wife are cogent reasons for the conclusion that the parties definitely had support in mind in formulating that provision of the agreement.

Reviewed by the Court.

*Decision will be entered under Rule 50.*