Arletta C. Harris v. Commissioner.
Harris v. Commissioner
Docket No. 31089.
United States Tax Court
1952 Tax Ct. Memo LEXIS 103; 11 T.C.M. (CCH) 895; T.C.M. (RIA) 52258; August 25, 1952
*103 Junius H. Payne, Jr., Esq., 810 Guaranty Bank Bldg., Alexandria, La., for the petitioner. J. P. Crowe, Esq., and D. Z. Cauble, Jr., Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in petitioner's income taxes for the years 1945 through 1948 as follows: Year
Amount
1945
$729.00
1946
671.00
1947
759.77
1948
847.42 Certain items have been settled by the parties. The single issue raised is whether monthly payments $300of made to petitioner by her former husband are taxable to her, under section 22(k), as income received under an agreement incident to their divorce in discharge of her husband's marital obligation of support. Some of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found. Petitioner is a resident of Alexandria, Louisiana. Income tax returns for the years involved were filed with the collector of internal revenue for the district of Louisiana. Petitioner was married to Homer H. Harris, Sr., hereinafter sometimes called the husband, at St. Joseph, Missouri, in 1910. They became residents of Louisiana, a community property *104 state, in 1911, and have resided there to the present time. Petitioner and her husband lived in a Louisiana marital community for more than 20 years, until it was dissolved by divorce. Petitioner and her husband separated about 1935, and were divorced in September 1944. They never entered an agreement not to have a community of acquets and gains. Petitioner eventually received $39,237.50 from her father's estate and $8,772.31 from the estate of her grandfather, as her separate property. Of these funds $44,700 was deposited in the husband's account in the Guaranty Bank and Trust Company, in Alexandria, Louisiana. At the time of the transfer, petitioner and her husband agreed that the husband would invest these funds on petitioner's behalf, even though investments were not made in her name. The husband invested these funds, in his own name, in various stocks and commodities. Some of these purchases were outright, others were made on margin. He maintained only one bank account in his own name, in which he merged his own funds with those of petitioner. In order to keep track of petitioner's funds and make a record of his investments on her behalf, he maintained a double entry set of *105 books of account at their house in Alexandria. He made entries on the basis of his brokers' monthly trading reports, and also noted payments made to brokers on margin accounts. Income or profit derived from this trading was reinvested by the husband on petitioner's behalf. Petitioner was aware of the manner in which her funds were handled. She had access to the books of account in their home, and her husband answered any questions she had in connection therewith. During the time when the husband was handing petitioner's funds, he borrowed $7,500 from petitioner and gave her a note for this amount. In 1922, when all of petitioner's funds were invested on margin, market values dropped sharply and the husband had to invest additional funds to maintain her equities. He invested $10,000 of his own funds as additional margin on her behalf. All of petitioner's funds, plus the husband's $10,000, were lost. As a result of the $10,000 loss, the husband considered his $7,500 debt to his wife canceled. The losses suffered during the year 1922 were recorded in the books of account which the husband kept for petitioner's separate funds, and petitioner was informed of these losses. Petitioner *106 and her husband were separated about 1935, and when the latter left the home the books of account were left there. The husband filed a petition for divorce against petitioner in August 1944. Petitioner filed an answer in September 1944, which reads in part as follows: "THAT appearer is entitled to alimony from the plaintiff for support of herself, both during the pendency of this suit and thereafter." The husband was granted an absolute divorce from petitioner on September 26, 1944, by the Ninth Judicial Court, Parish of Rapides, State of Louisiana. In the divorce decree the Court recognized petitioner and the husband as owners of one-half undivided interest in all property belonging to the community, but final settlement was reserved pending determination thereof by such Court. During the years prior to the divorce in which petitioner and the husband were separated, petitioner had unrestricted use of charge accounts. The first of every month the bills for these accounts were sent to the husband's office (Hill, Harris & Co.), and were paid by him. If petitioner needed cash, she would go to the office and ask the cashier for whatever she desired, and these sums were charged *107 on the books of the business to the husband. During these same years petitioner took numerous trips and did whatever she desired. On December 26, 1944, petitioner and the husband entered into a written agreement in settlement of all the differences pertaining to community property and claims for separate property and such agreement was approved by the Ninth Judicial Court, Parish of Rapides, State of Louisiana, and made a judgment thereof on January 2, 1945. In the settlement agreement certain real and personal property was allocated to each party and in addition thereto the husband bound himself as follows: "(1) That he assumes the payment of all community debts due by the former community existing between plaintiff [the husband] and defendant [petitioner] and relieves defendant of any responsibility therefor. "(2) That he obligates himself, his heirs and assigns to pay to Mrs. Arletta Cato Harris the sum of $300.00 per month for the balance of her natural life, beginning as of December 1, 1944, and monthly thereafter during the natural life of the said Mrs. Arletta Cato Harris. "(3) To cancel all indebtedness of Mrs. Arletta Cato Harris appearing on the books of Hill, *108 Harris & Co. "(4) To cause necessary repairs to be made to the roof of the property located on Marye Street, being the home of Mrs. Arletta Cato Harris." The settlement agreement also contained the following paragraph: "The said Mrs. Arletta Cato Harris further declared that she accepts this settlement in full and complete settlement of all claims for alimony as long as the sum of $300.00 per month is paid to her as hereinbefore set forth, but, in the event of the failure of Homer H. Harris, Sr. to make said monthly payments, then all her rights to claim alimony by proper proceedings are hereby reserved unto her." During the conferences between the parties prior to the settlement agreement petitioner had security in mind and was desirous of having a definite income. She stated many times that she must have security. Petitioner does not know how the monthly payment figure of $300 provided for in the property agreement was arrived at, except that it was all that her husband would pay. During the year 1922 the husband purchased an interest in a corporation and began to operate it as Hill, Harris & Co. Shortly before the divorce proceedings he purchased the outstanding shares *109 of the corporation which were not owned by his family and formed a partnership in which the community held an undivided two-thirds interest. At the time of the divorce proceedings the partnership owed outstanding debts of approximately $250,000. As a part of the property settlement the husband took over the undivided one-third interest of petitioner in the partnership and assumed all community debts. The settlement agreement of December 26, 1944, did not state therein in terms of money or property any principal sum which was to be discharged by the monthly payments of $300 by the husband to petitioner. The payments made by the husband during the years 1945 to 1948, inclusive, were made subsequent to the divorce of the parties. The payments in question were made by the husband in discharge of a legal obligation incurred as a result of the marital or family relationship and under a written instrument incident to the divorce. Opinion We could not find in favor of this petitioner without doing violence to the fundamental purpose of sections 22(k) and 23(u), Internal Revenue Code, and to two of our recent cases, Thomas E. Hogg, 13 T.C. 361, and *110 Floyd H. Brown, 16 T.C. 623. The intention to make the two code sections reciprocal, so that if payment is deductible by the husband it will be chargeable to the wife, is inescapable. House Report No. 2333, Ways and Means Committee, 77th Cong., 2d Sess., pp. 71, 73. And in the two cases referred to, husbands were held entitled to deduct monthly payments under circumstances if anything more favorable to respondent than those applying here to petitioner. These cases are in accord with a decision of the Court of Appeals most familiar with the applicable local law. Scofield v. Greer (C.A. 5), 185 Fed. (2d) 551. Petitioner was satisfied to accept the agreement "in full * * * settlement of all claims for alimony as long as the sum of $300.00 per month is paid to her * * *." Even if, as petitioner contends but has not demonstrated, she was not entitled to alimony as such under Louisiana law, her case is no stronger than respondent's in Thomas E. Hogg, supra, 367-8, where we said, regarding residents of Texas: "* * * Here, as in the Hesse case [Pennsylvania], state law imposed no duty of support on the husband after divorce, but sections 22(k) *111 and 23(u) were added to the code to produce uniformity in the tax treatment of amounts paid in lieu of alimony [italics added] regardless of variance in state laws 'concerning the existence and continuance of an obligation to pay alimony.' H. Rept. No. 2333, supra. We are of opinion, therefore, that the monthly payments here in controversy were received by the wife in discharge of a legal obligation which was incurred by * * * [the husband] because of the marital relationship and under a written instrument incident to the divorce. Such payments are deductible by him under section 23(u). "In so holding, we do not disregard or deny effect to the whole agreement as resulting also in a property settlement. * * *" That there may have been only community property involved in the Brown and Hogg cases, where the present petitioner insists she also had a claim to her own separate property, can certainly not justify reaching a contrary result here. The wife's right in the community became a separate equal and co-existing right, Rawlings v. Stokes, 194 La. 206, 193 So. 589, and a property settlement would have to take that into account quite as rigorously as separate property *112 - if any - entrusted to the husband. Nor can we accord to the further provisions of the agreement the persuasive cogency sought for them by petitioner. When it was agreed, after the clause previously quoted "* * * but, in the event of the failure of * * * [the husband] to make said monthly payments, then all her [petitioner's] rights to claim alimony by proper proceedings are hereby reserved unto her" (italics added), we think it evident she was merely safeguarding the method - not the fact - of receiving support-money. That the provision for monthly payments was incorporated in an agreement approved by the court rather than as the result of a finding by the court itself may well have led to this quite understandable precautionary phrasing. See Louisiana Civil Code, article 231. As in the Hogg and Brown cases, petitioner had been receiving support for a considerable period prior to the divorce. In the Hogg case (p. 366), as here, the husband "would give no more." In the Brown case (p. 631), we said, referring also to Louisiana residents, in language even more applicable here, since that petitioner had the burden of proof, as this one does: "But respondent points out that *113 'petitioner has not shown that under the law of Louisiana his divorced wife would have been granted alimony or support in any event.' However, it was not necessary for petitioner to show this. At the time the negotiations for the agreement were under way * * * [the wife] was the wife of petitioner. As such, she of course had a present right to support, and petitioner had been discharging that right. It would be unrealistic to hold that she gave up this right to support without consideration and that, as respondent contends, everything she received under the agreement was in exchange for her share of the community property." There being no question that these payments were made subsequent to the decree and pursuant to an agreement incident to a divorce, and finding as we have that they discharged a legal obligation resulting from the marital relationship, we are of the opinion that in this respect, under Internal Revenue Code, section 22(k), the deficiencies were correctly determined. Decision will be entered under Rule 50.