OPINION. Tietjens, Judge: Petitioners in these consolidated proceedings take opposing positions. Corinne contends that the payments made to her by John pursuant to the agreement were in consideration for the transfer to John of her vested interest in the community property and as such were not includible in her income pursuant to section 22 (k) ,[1] John argues that the payments were “in the nature of alimony” or “in lieu of alimony” and hence deductible by him under section 23 (u).[2] The Commissioner, in effect, is neutral. He has filed no briefs and stands on his determinations as set forth in our findings of fact. We agree with Corinne. The most convincing evidence in the record is the written agreement itself. In terms it is an out-and-out division or settlement of the property interests of the parties. Nowhere does it speak or refer to support, maintenance, or alimony or a waiver of such rights by Corinne. She had little knowledge of the items comprising the community property or their value and in that respect relied upon the representations made by John. The main items to which the payments in controversy were related were the stocks in four corporations which the community controlled. From those corporations John was receiving approximately $52,000 a year in commissions. The agreement makes specific reference to those stocks and the desirability, from the standpoint of maintaining their value, of transferring them to John who was the member of the community possessing business experience. Further, the agreement recites that the value of the stocks is “calculable” and that “one half of the value thereof” should be “distributed and paid over to Corinne.” The value of that one-half interest in the stocks was fixed in the agreement, presumably on the basis of representations made by John, at $138,000, and a note in that amount was given to Corinne. It is payments made on that note which are here in issue. We think the payments received by Corinne were plainly in consideration of her property interest in the stocks and were not in lieu of alimony or in the nature of alimony. We recognize that the written agreement is not in and of itself necessarily determinative of the issue and that evidence extraneous of the agreement must be examined in order to arrive at the proper answer. This was done in Thomas E. Hogg, 13 T. C. 361, Floyd H. Brown, 16 T. C. 623, and Julia Nathan, 19 T. C. 865, all relied on by John, in each of which the Court concluded that the payments there involved were really for support or in lieu of alimony rather than consideration for the transfer of property, and were either deductible by the husband or taxable to the wife. We think those cases are distinguishable on their facts and for the following reasons: In Hogg the Court said that there was no calculation of the amount of property to which the wife might be entitled and that such amount was not a factor in arriving át the settlement terms. Furthermore, the husband there had been paying the wife $1,200 per month as support pending the agreement and the Court construed the settlement negotiations as having as their primary consideration not community property division but the husband’s willingness to continue those monthly payments. In Brown the main item of the community property consisted mainly of drilling equipment which it was not feasible to divide. Furthermore, the community was heavily burdened by debt which the husband undertook to discharge, and the wife received other community property which the Court thought could properly be deemed consideration for the transfer of her interest in the community property. The $500 monthly payments involved were therefore considered by the Court, not to be for property rights, but as consideration for the wife’s waiver of support rights. In Nathan no community property was involved, it was doubtful the wife had any interest in the husband’s business, and the Court concluded that it affirmatively appeared that the payments involved, part of which were for the support of children, were designed primarily for the wife’s support. Another case relied on by John is Scofield v. Greer, (C. A. 5) 185 F. 2d 551, affirming 89 F. Supp. 75. There the monthly payments in question were to cease upon the wife’s remarriage and “were in addition to her share of the community property.” We do not think the facts which formed the basis for the holdings in the above cited cases are present here. An attempt was made to supply them by John’s oral testimony. He testified that during the settlement negotiations he had “Corinne’s support in mind”; that he estimated she would need $6,000 per year “to live on as she had been living and take care of doctor bills and things of that nature”; that he had a life expectancy of 23 years and that the $138,000 face amount of his note was arrived at by multiplying $6,000 by 23. We are not impressed by this testimony and do not believe that what John “had in mind” played an important part in the negotiations. Corinne was the only other witness. She testified that she had never heard anything about the $6,000 per year figure; that John had never said anything to her about furnishing her support and that she considered the $138,000 to represent her share of the value of the community stocks and that that figure had been stated to her by John. There was also testimony by John that he estimated his net worth at about the time of the settlement agreement to be about $66,000. This testimony was not corroborated. It was simply an estimate of his own net worth and we do not see how it can be taken as in any way diminishing the effect of the recitations in the agreement that the value of one-half the stocks was calculated at $138,000. The latter figure is further substantiated by that portion of the agreement which contains provisions as to what should happen if John should dispose of his stocks or if the businesses should be terminated prior to the time the $138,000 obligation was discharged. It was there provided what should happen in the event that “the sale price or the value of any things or properties received shall be in a sum in excess of Two Hundred and Seventy-six Thousand Dollars ($276,000.00) * * This certainly indicates to us that it was thought the value of the stocks was at least $276,000 — one-half of which, of course, is $138,000, the figure John agreed to pay Corinne. From the foregoing it appears to us that the values of the community property were calculated and that those values, rather than what Corinne might need or be satisfied with in the form of support or alimony formed the basis of the settlement agreement. John’s thoughts, about support, even if we accept his testimony in that regard, were not disclosed to Corinne, and so far as she was concerned, her interest in the transaction was to receive her fair share of the value of the community property. We find no facts of record from which we can infer that the parties intended the payments to be made under the agreement to be anything other than consideration for Corinne’s community property. After carefully considering all the facts of record, we conclude that the transaction amounted to a sale or transfer of Corinne’s one-half interest in the stocks for $138,000 and that the sums paid to her were in consideration of her community interest therein and did not represent payments for support or in lieu of alimony. Accordingly, the amounts in controversy were not deductible by John and should not be included in Corinne’s income. In concluding, it is pointed out that no question as to whether Corinne realized income taxable as capital gain has been raised in this proceeding and none is decided. See Jessie Lee Edwards, 22 T. C. 65. Decision will be entered for the respondent in Docket No. Jf,I¡333. Decision will be entered for the petitioner in Docket No. JfTíl¡3. SEC. 22.GROSS INCOME. (k) Alimony, Etc., Income. — In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation, which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shaU not be includible in the gross income of such husband. * * * SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions : [[Image here]] (u) Alimony, Etc., Payments. — In the case of a husband described in section 22 (k), amounts includible under section 22 (k) in the gross income of his wife, payment of which is made within the husband’s taxable year. If the amount of any such payment is, under section 22 (k) or section 171, stated to be not includible in such husband’s gross income, no deduction shall be allowed with respect to such payment under this subsection.