Clyda T. Jones v. Commissioner.
Jones v. Commissioner
Docket No. 85204.
United States Tax Court
T.C. Memo 1961-266; 1961 Tax Ct. Memo LEXIS 84; 20 T.C.M. (CCH) 1385; T.C.M. (RIA) 61266; September 21, 1961
Thomas E. Smail, Jr., Esq., for the petitioner. Cyrus A. Johnson, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax in the amount of $267.66 for the year 1957. Petitioner claims that she overpaid her tax for that year in the amount of $126. The issues are: 1. Are payments of $100 per month received by petitioner from her former husband during 1957 taxable as alimony? 2. Did petitioner provide more than one-half of the support for her minor son during the year 1957? Findings of Fact Some of the facts have been stipulated and, as stipulated, they are incorporated herein by reference. Petitioner, a resident of Sacramento, California, filed her *85 income tax return for the year 1957 with the district director of internal revenue, San Francisco, California. Petitioner was married to Joseph Roy Jones, Jr. (sometimes hereinafter referred to as Roy) on February 22, 1941. One child, Joseph Roy Jones, III, was born of the marriage. He became ten years of age on October 14, 1957. On or about March 31, 1954, petitioner and Roy separated and petitioner filed a complaint in the Superior Court of the State of California, County of Marin, in which she asked, in part, that she be granted an interlocutory decree of divorce; that that decree be made final at the expiration of one year; that she be awarded custody of her son; that certain real property described in Paragraph V, Subsection (2), of her complaint be set aside to her free and clear of the present indebtedness; that the remainder of the community property described in Paragraph V be divided equitably between her and her husband; and that she be awarded alimony of $300 per month during the pendency of the action and thereafter permanently for the support and maintenance of herself and son. In Paragraph V it was alleged that the community property of petitioner and her husband *86 consisted of the following: (1) that certain real property situated in the City of Sacramento, County of Sacramento, State of California, more particularly described as follows: Lot 151 as shown on the Plat of South Land Park Terrace Unit #2, recorded in the Office of the Recorder of Sacramento County, commonly described as 4621 Sunset, Sacramento, California, subject to an indebtedness the exact balance of which is unknown to plaintiff at the present time; (2) that certain real property situated in the County of Marin, State of California, commonly described as 132 Ridge Road, Fairfax, Marin County, California, upon which there has been recorded a Declaration of Homestead in behalf of the parties in this action, and which is subject to an indebtedness the exact balance of which is unknown to the plaintiff at the present time; (3) one 1939 Plymouth Coupe Automobile; (4) one 1951 Plymouth Club Coupe Automobile; (5) commercial account with the Bank of America NT & SA, Fairfax, Marin County Branch, the exact balance of which is unknown to plaintiff; (6) household furniture and furnishings located at 132 Ridge Road, Fairfax, Marin County, California. On June 7, 1954, a *87 stipulation was filed in the court wherein Roy agreed to pay to petitioner $165 per month during the pendency of the divorce action for the support and maintenance of petitioner and her son. On July 21, 1954, Roy filed a cross-complaint in which he admitted that the 1939 Plymouth automobile, the commercial account with the Bank of America, and some of the household furniture and furnishings located at 132 Ridge Road were community property. He denied that the real property listed in Paragraph V of the complaint was community property, and alleged that the parties owned in joint tenancy the following: (a) That certain real property situated in the City of Sacramento, County of Sacramento, State of California, more particularly described as follows: Lot 151 as shown on the Plat of South Land Park Terrace Unit #2, recorded in the Office of the Recorder of Sacramento County, commonly described as 4621 Sunset, Sacramento, California, subject to an indebtedness of approximately $7,200.00; (b) That certain real property situated in the County of Marin, State of California, commonly described as 132 Ridge Road, Fairfax, Marin County, California, subject to an indebtedness in the *88 amount of $11,000.00. A residence located at 132 Ridge Road, Fairfax, California (hereinafter referred to as the Fairfax residence), was purchased on or about March 15, 1952, and the deed to the property was recorded in the names of petitioner and Roy, as joint tenants. Funds to pay the purchase price of $21,635 were provided by Dr. J. Roy Jones, Sr., Roy's father. Dr. Jones told petitioner and Roy and petitioner's parents at the time of the purchase that the house was a gift by him to petitioner and Roy. No mention was made at that time of any note. In September 1952, Dr. Jones presented petitioner and Roy with a promissory note and asked petitioner and Roy to sign it. The note for $11,000 was dated September 1, 1952, and was payable one day after date to Hetty B. Jones and Herschel L. Jones, mother and brother, respectively, of Roy "with interest from date at the rate of 1 (one) percent per annum until paid." Petitioner and Roy signed the note. Dr. Jones explained to them that he wanted "to keep things equal" between Roy and Herschel, and that if they ever sold the Fairfax residence Herschel would have the amount of the note coming to him. No amount, principal or interest, was *89 ever paid on the note. On or about August 19, 1954, a "Complaint on Promissory Note" action was commenced in the Superior Court of California, in and for the County of Marin, by Hetty B. Jones and Herschel L. Jones against petitioner and Roy, in which they asked for a judgment of $11,000, plus interest due on the note. On or about October 2, 1954, an answer to this complaint was filed by Reynold J. Gualco, as attorney for petitioner and Roy, in which they admitted that they had signed the note for $11,000; denied that there was any amount due and unpaid on account of the note, and alleged that there was no consideration given for the execution of the note. In the latter part of 1954, an attorney and his associate representing petitioner, and an attorney representing Roy, entered into negotiations to arrive at a settlement of petitioner's claims for support payments for herself and her son, and for a division of the property acquired by her and Roy during their marriage. These negotiations culminated in a "Property Settlement Agreement" entered into by petitioner and Roy as of November 23, 1954. That agreement provided, in part, as follows: 1. Wife hereby grants, transfers, quitclaims *90 and conveys to Husband, as his sole and separate property and estate, the real property described as 132 Ridge Road, Fairfax, Marin County, California, free and clear of liens or encumbrances. 2. Husband hereby grants, transfers, quitclaims and conveys to Wife, as her sole and separate property and estate, the real property described as 4621 Sunset Drive, Sacramento, California, subject to any existing liens, encumbrances or liabilities. The interest of J. Roy Jones, Jr. and Clyda T. Jones in this property is presently evidenced by an agreement of June 12, 1950, between said parties and the Department of Veterans' Affairs of the State of California. It is the intention of the parties that by this provision of this agreement Husband conveys to Wife all of Husband's interest under the terms of said agreement with the Department of Veterans' Affairs of the State of California, subject to whatever indebtedness is owing under the terms of that agreement, or any existing liens, encumbrances or liabilities on said property. 3. Husband agrees to pay Wife $3,100.00 on or before January 1, 1955. * * *
5. There is presently pending in the Superior Court of the State of California, *91 in and for the County of Marin, Action No. 25163, entitled "Hetty B. Jones and Herschel L. Jones, Plaintiffs, v. J. Roy Jones, Jr. and Clyda T. Jones, Defendants." Husband will secure a dismissal with prejudice of this action, and Husband will save Wife harmless from any liability or claim in connection with said action. * * *
7. The beneficiary on the $2,000.00 Northwestern Mutual Life Insurance policy insuring Husband's life shall be changed from Clyda T. Jones to J. Roy Jones III. 8. Husband agrees that he will maintain in force the existing $10,000.00 Government-issued life insurance policy and the $6,000.00 Southern Pacific life insurance policy, both insuring his life, and will maintain as the beneficiary of said policies J. Roy Jones III. 9. Wife has incurred an obligation to Marin General Hospital in the amount of $109.90. Husband will pay any amount of this obligation not paid under the terms of an insurance policy with Northern Life of Seattle, Washington. * * *
12. Husband agrees to transfer to Wife the 1951 Plymouth Coupe automobile which is registered in his name. 13. Husband agrees to, and does hereby, transfer and convey to Wife as her separate property *92 all the community household furniture and furnishings now owned by the parties, except one of the two refrigerators, the mangle, and a table known as the table the painters broke. 14. The parties agree that certain furniture, furnishings, books and tools are the separate property of Husband and will remain his property. * * * 15. Husband agrees to pay, and Wife agrees to accept, $100.00 per month for five years, or until her prior remarriage or death, whichever event occurs first, which sums, together with the other real and personal property to be transferred to Wife as herein set forth, are in full satisfaction of her rights and claims in any interest in the community property or in the separate property of Husband, as well as in full satisfaction of her right and claim to alimony, support and maintenance from Husband. Said $100.00 per month shall be payable at the rate of $50.00 on the tenth day and $50.00 on the twenty-fifth day of each and every month, and the first of said payments shall be due on November 25, 1954. This agreement for semi-monthly payments is an integral part of this property settlement agreement and cannot therefore be modified by the court. Wife hereby *93 waives any and all claims against Husband for alimony, maintenance and support whatsoever. * * *
21. This instrument is intended to be a full, complete and final adjustment of all the property rights of the parties hereto, and neither party shall or will at any time hereafter make or attempt to make any claim or demand predicated upon or growing out of the relations of husband and/or wife against the property of the other, except such claim or demand as shall arise through the breach of any term or covenant of the within agreement. * * *
26. Husband shall pay to Wife the sum of $75.00 each and every month for the education and support of said minor child, payable at the rate of $37.50 on the tenth day and $37.50 on the twenty-fifth day of each and every month, the first said payment to be made on November 25, 1954. The parties agree that the amount paid for the support and education of said child and the rights of visitation reserved to Husband are subject to modification in accordance with the changed circumstances of the parties and of said child. * * *
The agreement also provided that petitioner would have custody of her son, but that Roy should have the right *94 to have him at the following times: One week each Christmas vacation; Two week ends of each month; Every other Christmas and Easter day; Four days of Easter vacation; and Five weeks of summer vacation time. Petitioner and respondent have stipulated that as of the date of the "Property Settlement Agreement" the cost of the following items mentioned in that agreement was as follows: Fairfax residence
$22,000.00
Residence located at 4621 Sunset
Drive, Sacramento, California
(hereinafter referred to as the
Sacramento residence)
14,300.00
Subject to a mortgage of
7,013.70
1951 Plymouth automobile
1,000.00
The Superior Court of the State of California in and for the County of Marin entered an Interlocutory Decree of Divorce and a Final Decree of Divorce in the matter of Clyda T. Jones v. Joseph R. Jones, Jr., on December 10, 1954, and December 12, 1955, respectively. Both of these decrees provided, in part, as follows made and entered into between the plaintiff and defendant on November 23, 1954, be and the same is hereby incorporated herein and made a part hereof the same as though set forth in full herein and the parties hereto are hereby ordered to conform *95 to the terms thereof. 7. That no alimony is awarded the plaintiff. Petitioner was not gainfully employed during 1954, or during the year following the divorce. During the year 1957, Roy paid petitioner $100 a month pursuant to the provisions of paragraph 15 of the "Property Settlement Agreement". He also paid her $75 a month for the support of their child pursuant to paragraph 26 of that agreement. In his return for the year 1957, Roy deducted $1,200 (the aggregate of the $100 monthly payments) paid to petitioner during that year as alimony. The monthly payments of $100 received by petitioner from Roy during the year 1957 represented periodic payments received after a decree of divorce in discharge of a legal obligation which, because of the marital relationship, was imposed on Roy under provisions of the "Property Settlement Agreement" incorporated in the decree, and were includible in her gross income. During the year 1957 petitioner maintained a house for herself and her son at 970 Inez Way, Sacramento, California, which had three bedrooms, three baths, large activity room, kitchen, dining room, living room and a large yard. The fair rental value of the furnished residence *96 during 1957 was $200 per month. Her son lived with her about 75 percent of the time during 1957, and during the remainder of the year he was with Roy. Petitioner and Roy furnished all of the support their son received during that year. Petitioner provided more than one-half of her son's support during the year 1957. Opinion RAUM, Judge: 1. Alimony. We are first called upon to decide whether the payments of $100 per month received by petitioner from Roy during the year 1957 were "periodic payments * * * in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree [of divorce] or under a written instrument incident to such divorce * * *." Section 71(a), Internal Revenue Code of 1954. Payments, commonly known as alimony, which meet these requirements are includible in the wife's gross income and are deductible by the husband from his gross income. The provisions of the "Property Settlement Agreement", incorporated in the interlocutory and final decrees of divorce, were not limited to a settlement of the property rights of petitioner and Roy. Included therein was a *97 provision for the payment by Roy to petitioner of $75 per month for the support of their son, and also the following provision the effect of which is in controversy: 15. Husband agrees to pay, and Wife agrees to accept, $100.00 per month for five years, or until her prior remarriage or death, whichever event occurs first, which sums, together with the other real and personal property to be transferred to Wife as herein set forth, are in full satisfaction of her rights and claims in any interest in the community property or in the separate property of Husband, as well as in full satisfaction of her right and claim to alimony, support and maintenance from Husband. Said $100.00 per month shall be payable at the rate of $50.00 on the tenth day and $50.00 on the twenty-fifth day of each and every month, and the first of said payments shall be due on November 25, 1954. This agreement for semi-monthly payments is an integral part of this property settlement agreement and cannot therefore be modified by the court. Wife hereby waives any and all claims against Husband for alimony, maintenance and support whatsoever. Petitioner contends that the payments of $100.00 per month which she received *98 from Roy during the year 1957 were part of the property settlement and did not represent alimony. In support of her contention she relies in part upon the last two sentences of paragraph 15 and upon the provision in both the interlocutory and final decrees "That no alimony is awarded the Plaintiff". This Court in Ann Hairston Ryker, 33 T.C. 924, 929, in considering an issue similar to that here involved, stated: "Whether the payments in fact represent alimony or are in consideration of petitioner's interest in the community property is a question that turns upon the facts, and not upon any labels that may or may not have been placed upon them." And in Lazar v. Superior Court, 16 Cal. 2d 617, 107 P. 2d 249, at page 251, the Supreme Court of California, after concluding that certain monthly payments by a husband to his wife represented alimony, said: Nor do we think this conclusion is disturbed by the presence of that paragraph in the decree declaring that "the plaintiff is not entitled to maintenance, support or alimony, and no award is made to her." The only reasonable construction attributable to the latter provision is that the wife "is not entitled *99 to maintenance, support or alimony" other than that theretofore agreed to by the parties and approved and adopted by the court. * * * Cf. Revenue Ruling 58-192, 1958-1 C.B. 34. At the time petitioner and Roy separated petitioner was unemployed. In the complaint filed by her in the divorce proceeding on March 31, 1954, she asked that she be awarded $300 per month for the support of herself and her son pendente lite and thereafter permanently. During the pendency of the action she received from Roy $165 per month for the support of herself and her son. The "Property Settlement Agreement" provided for payments of $75 per month by Roy to petitioner for the support of their son, and in paragraph 15 for payments by Roy to petitioner of $100 per month "for five years, or until her prior remarriage or death". Apparently realizing that the provisions of paragraph 15 with reference to the latter payments needed some clarification in order to determine whether it was the intention of the parties that they were to be alimony or part of the property settlement, both petitioner and respondent produced witnesses who testified with respect to the negotiations which culminated in *100 the signing of the agreement. Those witnesses gave somewhat differing accounts as to the negotiations. And while the matter may not be completely free from doubt, we conclude on the basis of all the evidence that the dominant purpose of the $100 monthly payments was to provide support for petitioner and was not related to the settlement of property rights between the spouses. The respondent did not err in his determination that the $1,200 which petitioner received from Roy during 1957 represented alimony which should have been included in her income for that year. Cf. Floyd H. Brown, 16 T.C. 623; Thomas E. Hogg, 13 T.C. 361. 2. Dependency exemption. Whether petitioner is entitled to a dependency exemption for her son turns upon whether she provided more than one-half of his support during 1957. The evidence shows that the child lived with petitioner, and that pursuant to the divorce decree he spent a total of approximately one-fourth of the year with his father. The father contributed $75 a month to petitioner for the boy's support, also in accordance with the divorce decree. We received a considerable amount of evidence, not only by the way of stipulation *101 but also through testimony and documents submitted at the trial as to various expenditures made by each of the divorced spouses on behalf of their child. That evidence related to such items as food, shelter, clothing, entertainment, health, vacation trips, toys, allowances, etc. In general, we were impressed by the fairness of the testimony given by both parents, and we were satisfied that the father made substantial expenditures on the boy's behalf in addition to the $75 monthly payments required of him by the divorce decree. Nevertheless, we conclude from all the evidence that the expenditures made by petitioner in 1957 that were properly allocable to the support of her son (in excess of $900 paid to her for that purpose by her former husband), exceeded the total expenditures made by her former husband for the boy's support, and we have accordingly found as a fact that she provided more than one-half of his support during 1957. Decision will be entered under Rule 50.