Hazel Porter v. Commissioner.
Porter v. Commissioner
Docket No. 5839-64.
United States Tax Court
T.C. Memo 1966-79; 1966 Tax Ct. Memo LEXIS 202; 25 T.C.M. (CCH) 448; T.C.M. (RIA) 66079; April 18, 1966
Thomas E. Meister, 505 Walnut St., Cincinnati, Ohio, for the petitioner. L. B. Terry, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion *203 MULRONEY, Judge: Respondent determined a deficiency in petitioner's income tax for 1961 and 1962 in the respective amounts of $1,541.75 and $211.54. The issues are (1) whether certain payments received by petitioner in 1961 and 1962 are includable in her income as alimony under section 71 of the Internal Revenue Code of 1954, [1] and (2) whether petitioner is entitled to a deduction in 1961 under section 212 for legal fees incurred by her in connection with her divorce action. Findings of Fact Some of the facts were stipulated and they are so found. Petitioner Hazel Porter is a resident of Cincinnati, Ohio. She filed her individual Federal income tax returns for 1961 and 1962 with the district director of internal revenue, Cincinnati, Ohio. Petitioner was married to Walter G. Porter on October 24, 1936. At the time of the trial, Walter was president of Porter Precision Products Company, a corporation organized in 1946 and engaged in the punch manufacturing business. Walter had been connected with the corporation's predecessor since prior to *204 1936. He acquired stock in Porter Precision Products Company when it was organized in 1946 and at the time of trial held 13,500 shares of stock in the corporation (approximately 30 percent of the total stock). Petitioner was a regular employee (as a stenographer or secretary) of Porter Precision Products Company from 1953 through 1958 or early 1959. She was never a stockholder in the corporation. Petitioner and Walter separated in November 1959. After that date, Walter continued to make some payments towards home maintenance and other expenses for the petitioner. In addition, Walter paid petitioner a living allowance of about $150 each week from November 1959 to April 1960, and from April to August 1960 Walter reduced the weekly payments to petitioner for living allowance to $100. Walter discontinued the weekly payments to petitioner in August 1960 on advice of his attorney. On November 12, 1960 petitioner filed a petition for alimony in the Court of Common Pleas, Division of Domestic Relations, Hamilton County, Ohio. On the same date Walter filed an answer and cross-petition for divorce in which he requested, in part, that "he be declared the sole owner of all shares of stock *205 in the Porter Precision Products Company: [and]t hat he be awarded his just and equitable share of all other properties of these parties, real and personal." Petitioner's reply was filed on December 22, 1960, and an amended petition for divorce and alimony was filed by petitioner on March 16, 1961. On May 8, 1961 petitioner was divorced from Walter, and the decree of divorce provided in part as follows: It is also ordered that Plaintiff [petitioner herein] forthwith list the real estate at 615 Heatherdale Drive, Cincinnati 31, Ohio for sale with a real estate broker at a selling price of not less than Fifty-two thousand ($52,000.00) Dollars, and that said real estate be sold within a reasonable length of time, in the determination of the Court, and that the net proceeds of said sale, after deducting all expenses (including one-half of any payments which may be made by either of the parties) in connection with said real estate and the sale thereof, be divided equally between Plaintiff and Defendant. It is also ordered that the following stocks be divided equally between Plaintiff and Defendant: Alpha Portland Cement Co., Benquet Mining Co., Kerr-McGee Oil Co., American St. *206 Gobain Co., Wesco Financial Corp., and West Driefontaine, Inc., or in lieu thereof Plaintiff may retain said stocks as her own, including any rights, dividends, stock dividends or stock splits or otherwise, and credit Defendant with the payment of Twenty-four hundred and fifty ($2,450.00) Dollars to apply on the alimony order against Defendant as hereinafter described. It is ordered that the bank account of Plaintiff, in the amount of Nine thousand, eight hundred and sixty-seven ($9,867.00) Dollars, be divided equally between the parties, but in lieu thereof Plaintiff may retain said account in full, and credit Defendant with the payment of Fortynine hundred thirty-three and 50/100 ($4,933.50) Dollars to apply on the alimony order against Defendant as hereinafter described. It is further ordered that Defendant pay to Plaintiff the sum of Seventy-eight thousand ($78,000.00) Dollars as alimony, the payment of same to be a charge against the estate of the Defendant, Walter G. Porter, payable at the rate of Fifty-two Hundred ($5,200.00) Dollars per year, in equal monthly instalments, from date hereof, until fully paid, except that in the event of the death of the Defendant prior to *207 payment in full, then the balance due as of the date of death shall immediately become due and payable in full from the estate of the Defendant. At the time of the divorce the two children of petitioner and Walter, Carol Porter Rice and Gerry Porter, were 21 years old and 19 years old, respectively. Petitioner obtained custody of Gerry, who at the time was employed and earning about $100 per week. In 1961 petitioner (under the terms of the divorce decree) applied a one-half interest in the bank account ($4,933.50) and a one-half interest in the listed securities ($2,450) to Walter's obligation for alimony under the divorce decree, or a total of $7,383.50 in 1961. Since the alimony due from the date of the decree until the end of the year 1961 was only about $3,200, the difference between $7,383.50 and $3,200, or $4,183.50, was applied to the alimony payments due in 1962. Walter paid the petitioner in 1962 the amount of $1,017 which was the amount of alimony remaining due in 1962. Petitioner did not report any of these payments from Walter in her income tax returns for 1961 and 1962, which returns show total income from other sources in the respective amounts of $626.46 and $1,060.21. *208 Respondent determined in his notice of deficiency that the amounts of $7,383.50 and $1,017 were alimony payments includable in petitioner's income in 1961 and 1962, respectively, under the provisions of section 71. Petitioner paid legal fees in connection with her divorce action in 1961 in the total amount of $5,500. Walter was ordered by the court to pay $2,000 to petitioner for expenses of suit. Petitioner did not claim any portion of these legal fees as a deduction in her income tax return for 1961. Opinion The first issue is whether the payments received by petitioner in 1961 and 1962 from her former husband are periodic payments in discharge of a legal obligation which because of a marital or family relationship were incurred by the former husband under a written instrument incident to divorce or separation. Section 71(a)(1). Since the lump sum of $78,000, which the divorce decree labels as "alimony", is payable over a period of time ending more than 10 years from the date of the decree, the installment payments of $5,200 per year qualify as periodic payments. Section 71(c)(2). The decisive question is whether the payments were incurred by Walter for petitioner's support *209 because of the marital relationship. Petitioner contends that these payments were not intended for her support but, instead, represented a part of the property settlement. Whether the payments in question were for petitioner's support, i.e., alimony, or whether they represent consideration for petitioner's interest in property is a question that turns upon the facts and not upon any labels that may be placed upon them. Elizabeth H. Bardwell, 38 T.C. 84, affd. 318 F. 2d 786. We are convinced on this record that the payments to petitioner were designed for her support and were not for any interest she had in property. At the outset we note that the express terms of the divorce decree refer to the disputed payments as "alimony". This would seem to reflect accurately the intention of the parties. When Walter and petitioner were separated in November 1959, Walter made weekly payments for petitioner's support, and for several months prior to August 1960 (when the payments were discontinued on the advice of Walter's attorney) the support payments were $100 per week. It does not appear that petitioner had any significant income-producing property of her own, *210 and in the conferences between the legal representatives of the parties prior to the divorce decree in May 1961, petitioner's support requirements were of primary concern. Bernard J. Gilday, Jr., who was Walter's attorney, testified that in his conferences with petitioner's attorney they sought to anticipate petitioner's reasonable living costs and "we tried to reach an agreement of so much per week or per month to allow her reasonably and comfortably to live." A settlement agreement, which was embodied in the divorce decree, was finally reached under which petitioner would receive $100 per week for a period of 15 years. Walter testified that in agreeing with this settlement it was his intention "to give her support", and that the 15-year period was chosen "to carry her over to the social security time, more or less." Walter also testified that the reason for continuing the payments to petitioner even if she remarried was "that it might make it a little easier for her to find a remarriage." [2] He also testified that the settlement agreement reflected an understanding that the payments would be taxable to the petitioner. *211 Petitioner argues that the payments totaling $78,000 represented her interest in the 12,845 shares of stock in the Porter Precision Products Company held by Walter in 1961. But the record fails to show that petitioner had any property interest in this block of stock. Walter was employed by the corporation's predecessor when he married petitioner in 1936 and the record suggests that it was a family business. There is no indication that petitioner had any separate money or property at that time. When Porter Precision Products Company was formed in 1946, Walter acquired shares in the corporation and it also appears that he acquired additional shares as gifts from his mother. Petitioner never was a stockholder and, in fact, her only connection with the corporation appears to be some five or six years (1953 through 1958) in the corporation's employ as a stenographer or secretary. Moreover, while the divorce decree carefully mentions the assets which were divided between the parties, i.e., the home, the bank account, and certain stocks in other corporations, [3] there is no mention of the stock in Porter Precision Products Company. This appears to be an accurate reflection of the intention *212 of the parties. Walter's attorney in the divorce proceeding testified that the settlement agreement as adopted by the court in its decree "wasn't based upon any division of any stock or anything like that. It was based upon what this woman needed to live on." Similarly, Walter testified that "I at no time ever understood or ever agreed that the stock was in any way involved in this thing." Petitioner seems to feel that simply because the weekly payments of $100 over a period of 15 years (amounting to $78,000) were necessarily carved out of Walter's property, such payments qualify as a settlement of property rights. To the extent all payments made by a former husband to his divorced wife come from property on hand, such payments may, in a sense, be regarded as a division of property, but such payments must be treated as alimony under section 71 if their purpose is that of support. In view of the complete absence of any evidence of a property interest held by petitioner in these corporate shares, we do not see how the payments in dispute were *213 intended to be or were consideration for the release by her of any property interest in such shares. It may be true that the court in the divorce proceedings expressed some interest in the valuation of this stock. However, in doing so, it would appear that the court was merely apprising itself of all the pertinent facts about the financial situation of the parties in the divorce proceedings within the intent of the Ohio statutes. [4]
We hold, on the basis of this record, that the payments to petitioner in 1961 and 1962 were includable in her income in those years as alimony within the meaning of section 71. The next issue is whether petitioner *214 is entitled to a deduction in 1961 under section 212(1) for legal fees incurred in the divorce action. It has been stipulated that, while she paid legal fees of $5,500, her husband was ordered by the court to pay $2,000 to her for expenses of suit. Any deduction claimed by petitioner under this issue will, of course, be limited to $3,500. Section 212(1) allows a deduction for all ordinary and necessary expenses incurred "for the production or collection of income." Respondent's only argument on this issue is that, in view of the Supreme Court's recent decision in United States v. Gilmore, 372 U.S. 39, and United States v. Patrick, 372 U.S. 53, the petitioner is not entitled to deduct in 1961 any legal fees for services in her divorce action. In both of those cases the court disallowed deductions for legal fees under section 212(2), or its predecessor section under the Internal Revenue Code of 1939, incurred by husbands who were resisting their wives' claims to income-producing property incident to divorce proceedings. However, in Ruth K. Wild, 42 T.C. 706, this Court distinguished the Gilmore case and the Patrick case and held that the legal *215 fees incurred by the wife in divorce proceedings to obtain monthly alimony payments, which were includable in her gross income, were deductible by her under section 212(1). Here we have found that the weekly payments to petitioner under the divorce decree are taxable to her as alimony under section 71. Although we are not favored with any breakdown of the legal fees incurred by the parties in the 1961 divorce proceedings, we note that Walter paid $2,000 of the total $5,500 legal fees. In addition, we can infer from the evidence that much of the legal work involved the size and duration of the support payments to petitioner. We believe it would be a fair interpretation of the facts in this record to find that the legal fees to the extent of $3,500 were incurred by petitioner to obtain alimony includable in her gross income. Petitioner is entitled to deduct this amount in 1961 under section 212(1) under our holding in Ruth K. Wild, supra.
Decision will be entered under Rule 50. Footnotes
1. All section references will be to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. The requirement that the payments to petitioner be continued even in the event of her remarriage does not affect that status of such payments as alimony. See Thomas E. Hogg, 13 T.C. 361↩.
3. Although it is not too clear, the testimony of Walter at the trial indicates that these other stocks were held jointly with his wife.↩
4. Section 3105.18 of Title 31 of the Ohio Revised Code, which is entitled "Alimony", is as follows: The court of common pleas may allow alimony as it deems reasonable to either party, having due regard to property which came to either by their marriage, the earning capacity of either and the value of real and personal estate of either, at the time of the decree. Such alimony may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, as the court deems equitable.↩