LILY R. REIGHLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22101. Promulgated September 20, 1951.

*James I. Johnson, Esq.*, for the petitioner.
*Leonard A. Marcussen, Esq.*, for the respondent.
*William E. Evenson, Esq., Harry Henke, Esq.*, and *E. L. Skeel, Esq.*, *amici curiae*.

OPINION.

Harron, *Judge:* The pleadings present an issue under section 22 (k) of the Code only. Section 22 (k) deals with alimony payments paid to a divorced wife under "a decree of divorce or of separate maintenance." The petitioner contends that the payments she received from the Chicago bank for the years 1942–1945 under the Berlin and Chicago contracts are not "alimony" payments or payments of a nature which the provisions of section 22 (k) make taxable to a wife who "is divorced or legally separated from her husband under a decree of divorce or of separate maintenance." The contention of the petitioner is based upon the view that there was no right in the petitioner to receive "alimony" payments from Parsons.

The issue involves consideration of the right, if any, of the petitioner to receive "alimony" or support payments from Parsons after the termination of the marriage, under the facts and circumstances which provided grounds for the 1936 decree of the Berlin court in the petitioner's favor. The broad question is whether the payments to the petitioner under the Berlin and Chicago contracts come within the intent and scope of section 22 (k). Determination of this question requires consideration of the relation of the Berlin contract to the decree of the Berlin court and of the right, if any, which the petitioner had, under the facts and circumstances which were the basis of the Berlin decree, to receive support payments from Parsons after the termination of the marriage under the provisions of section 1345 of the German Civil Code which provided, in 1936, that an innocent spouse may, after the declaration of nullity or dissolution of the marriage, demand that the marriage relationship, particularly with respect to the duty of support, be so treated as if the marriage at the time of the declaration of nullity had been dissolved by divorce.

If the chief issue is decided adversely to the petitioner, a second question is presented by the pleadings, whether the payments for the years 1942, 1943, and 1944—$36,000—which sum was paid to the petitioner in 1945 under the decision of the Supreme Court of Illinois is taxable to the petitioner in 1945. As an alternative allegation, the petitioner has alleged in her petition that if the first question is decided against her, then the respondent erred in including in her income for 1945 more than $12,000, the total amount of the payments under the contracts for 1945. The allegation in the petition relating to the second issue does not present any question under section 171 of the Code, or other sections such as sections 162, 166, or 167, which

relate to the taxation of the income of trusts. The facts alleged in the petitioner as supporting the above stated alternative contention are briefly that the petitioner believes that the Chicago bank, since the deposit of securities by Parsons, had income from the securities at all times sufficient to pay the petitioner $1,000 per month at the time each and every payment of $1,000 was due the petitioner under the Berlin contract.

The petitioner received in 1945 from the bank arrearages in the monthly payments for a period beginning in 1939 and ending in May 1945 in the total principal amount of $68,202, exclusive of interest. The payment of the above total sum was made pursuant to the judgment of the Illinois Superior Court which became final in 1945, when it was affirmed by the Supreme Court of Illinois. The respondent has determined that $41,000 of the foregoing amount is taxable to the petitioner under section 22 (k), representing the arrearages in the payments for 1942, 1943, 1944, and the first 5 months of 1945, because the provisions of section 22 (k) are applicable only to years beginning after December 31, 1941.

*Issue 1.* The support payments in question were received under the terms of a written instrument in which Parsons obligated himself to make the payments. There can be no doubt that he so obligated himself "because of the marital or family relationship." Sec. 22 (k). Whatever doubt might have existed about that point has been decided by the courts of Illinois which held that the Berlin contract was not procured by fraud, duress, or misrepresentation, that it was not illegal or against public policy, and that it was valid. Also, the Berlin contract was clearly incident to the proceedings under which the marriage was terminated. It was executed at the time the petitioner's suit was pending in the Berlin court, and it provided that the parties believed with certainty that the "suit for cancellation of the marriage" would be decided in petitioner's favor. The condition which must be met under section 22 (k) that a written agreement to pay alimony or support payments must be part of an integral plan of the parties to obtain a divorce is met in this proceeding. See *Cox* v. *Commissioner*, 176 F. 2d 226, affirming 10 T. C. 955; *George T. Brady*, 10 T. C. 1192; *Robert Wood Johnson*, 10 T. C. 647; *Thomas E. Hogg*, 13 T. C. 361; *Jessie L. Fry*, 13 T. C. 658; *Bertram G. Zilmer*, 16 T. C. 365. It was clearly provided in the Berlin agreement that if, for any reason, the petition of the then Mrs. Parsons to have the marriage terminated should not be granted and the marriage should continue, the agreements made in the Berlin contract would not control and the parties reserved the right to make other "special agreements."

The problem in this proceeding presents a novel and unusual combination of factors and circumstances under section 22 (k) of the Code. We have heretofore expressed the view that issues under sec-

tion 22 (k) should be viewed realistically, *George T. Brady, supra*, p. 1198, and that we are to be guided by the intent of the Congress in enacting the provision, which was to "produce uniformity in the treatment of amounts paid in the nature of or in lieu of alimony regardless of the variance in the laws of different states concerning the existence and continuance of an obligation to pay alimony." *Tuckie G. Hesse*, 7 T. C. 700, 704; *Thomas E. Hogg, supra*.

The petitioner became legally separated[3] from her husband by court decree. Cf. *Frank J. Kalchthaler*, 7 T. C. 625, 627. Her complaint set forth grounds for the dissolution of the marriage which brought her cause of action, under the then existing German law, within section 1333 of the German Civil Code, rather than under section 1564, relating to actions for divorce. In connection with the pending suit for dissolution of the marriage, the petitioner and Parsons, each represented by attorneys who must be presumed to have known the pertinent German law, entered into a contract which recited, *inter alia*, that the then Mrs. Parsons intended to make an "alimony" contract with her husband; that both parties considered that she was "justified" in filing suit for "cancellation of the marriage"; and that "Mrs. Parsons is entitled in any case to procure dissolution of the marriage by court order." The parties in the contract, referred to it as a "contract of support," and stated that it was entered into because Mrs. Parsons was entitled to have the marriage dissolved. The petitioner was successful in her suit, and the Berlin court entered a decree in her favor. She was then entitled to make formal "demand" upon Parsons, under section 1345 of the German Civil Code, "that their relationship * * * with respect to the duty of support, be so treated as if the marriage at the time of declaration of nullity or dissolution had been dissolved by divorce, and the spouse to whom the nullity was known had alone been adjudged guilty," because Parsons, in effect, had agreed in the Berlin contract that the petitioner was innocent of knowledge of the nullity at the time of the marriage.

In applying the provisions of section 22 (k) of the Internal Revenue Code, a reasonable view of the facts before us is that the petitioner effectively exercised her right under section 1345. (See section 1347 of the German Civil Code set forth in the Findings of Fact.) She did so by executing the Berlin contract which was incident to the

---

[3] H. Rept. No. 2333, 77th Cong., 1st Sess., p. 72 ; 1942–2 C. B. 372, 427.

This section adds new subsections to sections 22 and 23, * * * in order to provide in certain cases a new income tax treatment for payments *in the nature of* or *in lieu of alimony* or an allowance for support *as between divorced or legally separated spouses.* These amendments are intended to treat such payments as income to the spouse actually receiving or actually entitled to receive them * * *. In addition, the amended sections will produce *uniformity in the treatment of amounts paid in the nature of or in lieu of alimony regardless of variance in the laws of different states concerning the existence and continuance of an obligation to pay alimony.* [Emphasis added.]

decree which dissolved the marriage. The contract by its declarations and provisions clearly shows that it was her intent to demand that their relationship with respect to the duty of support be treated as if the marriage had been dissolved by divorce. The actions of Parsons in executing the Chicago contract, in depositing securities with the Chicago bank, and in giving it irrevocable instructions to pay the dividends of the stock to the petitioner in compliance with the Berlin contract show that he understood not only that the petitioner had made such demand but also that she had not elected to relinquish the right afforded by section 1345.

Under the circumstances present in this proceeding, we reach the conclusion that under the German law as it existed in 1936, for the purpose of applying the provisions of section 22 (k), the decree of the Berlin court must be treated as a decree of divorce within the meaning and intent of section 22 (k), and that the support payments in question (and it is clear that they are support payments) are "in the nature of or in lieu of alimony." The contention of the petitioner that the legal distinction between a *void ab initio* marriage and a marriage which is terminated from the time of divorce is controlling cannot be approved for the purpose of this proceeding in view of the provisions of sections 1345 and 1347 of the German Civil Code. We agree with the view of the Supreme Court of Illinois in *Reighley* v. *Continental Illinois National Bank & Trust Co. of Chicago*, 61 N. E. 2d 29, 34, that, "To say the marriage never existed is merely fiction, as the parties sustained a relation for approximately one year that in this state would be the status of marriage." We are aided in our considerations of the issue under section 22 (k) by the view of the Illinois Supreme Court that the ground upon which there was dissolution of the marriage in Germany is a cause under Illinois law which operates to make the termination of the marriage effective from the time of its dissolution and to give the innocent party a right to receive alimony. *Reighley* v. *Continental Illinois National Bank & Trust Co. of Chicago*, *supra*.[4] In many states and territories of the United States, notwithstanding the legal differences between an annulment of a marriage and a divorce, the effect of a decree of annulment for the reason which existed in the petitioner's case will operate as in a divorce, from the time of the decree, and because of that permanent alimony may be granted.[5] Under the doctrine of putative

[4] See, also: Keezer, Marriage and Divorce, 3d ed., par. 1195, p. 1160, 1161; Grounds for absolute divorce; Alimony. In Illinois, the ground upon which the Berlin court dissolved the marriage is ground for divorce. Revised Statutes of Illinois, Ch. 40, par. 1.
 See, also: Remington's Revised Stats., sec. 982 (Washington 1932, the state of domicile of petitioner and Parsons in 1936).
[5] See: Alaska Compiled Laws, sec. 56–5–13 (1949); Conn. Gen. Stat., sec. 7341 (1949); Hawaii Revised Laws, sec. 12204 (1945); Iowa Code, sec. 598.24 (1946); New Hampshire Code, chap. 339, sec. 16 (1942); New Jersey Revised Stat., sec. 2:50–37 (Supp. 1938); New Mexico Stat. Ann. sec. 65–109 (1941); Oregon Compiled Laws Ann., sec. 9–914 (1940); Virginia Code, sec. 5,111 (1942).

marriage, the marital relationship is considered as having been valid up to the time the decree dissolving the marriage was entered. The German Civil Code provisions which were in effect in 1936 adopted this doctrine under sections 1345 and 1347, so that if a wife who was innocent of the nullity at the time of the marriage elects to invoke section 1345, the husband who had not acted in good faith is obligated to pay alimony to her. Also, it is a rule of conflict of laws that the effect of a decree nullifying a marriage from the date of the decree is the same as that of a decree of divorce, and that in a case where it is necessary to resort to a rule of conflict of laws, the rules to be applied are those which relate to divorce rather than the rules which relate to annulment. See Restatement of Conflict of Laws (1934), section 115, comment (c), and section 136 (a). See also, 1 Beale, Conflict of Laws (1936), section 115.2, where it is stated that if the nullity of a marriage dates from the entry of the decree, the "annulment is identical in effect with divorce."

We cannot say, in this proceeding, that the obligation incurred by Parsons under the Berlin contract to make support payments to the petitioner for life was not a legal obligation because of the marital relationships, or that the petitioner did not have the right to receive the support payments, and to claim that the effect of the decree dissolving the marriage was the same as though the proceeding had been for divorce, as it could have been under the law of Illinois which law the parties agreed could be followed in the construction of the Berlin contract in case a dispute arose. *Reighley* v. *Continental Illinois National Bank & Trust Co. of Chicago, supra,* p. 34. Nor can we say that the payments by Parsons were made gratuitously.

It has been noted by this Court before that the decree dissolving a marriage "need not incorporate or refer to alimony or maintenance provisions made by a prior or coincident agreement in order for such agreement to come within the purview of section 22 (k), * * *." *Floyd W. Jefferson,* 13 T. C. 1092, 1097; *Tuckie G. Hesse, supra; Robert Wood Johnson, supra;* and *George T. Brady, supra.* Also, we have held that section 22 (k) may properly be applied, in order to carry out the intent of the Congress in enacting the statute, where the payments to a wife are in the nature of or in lieu of alimony even though under the law of a particular state alimony is not allowed. *Tuckie G. Hesse, supra,* and *Thomas E. Hogg, supra,* pp. 366, 367, 368. Here, as in the *Hogg* case, the parties had reached an agreement in connection with a suit for dissolution of the marriage where the wife relinquished a present right to proceed formally under section 1345 of the German Civil Code in exchange for Parsons' contractual agreement to provide future support.

It is concluded that the monthly payments of Parsons to the petitioner were received by her in discharge of a legal obligation which

was incurred by Parsons because of the marital relation and under a written instrument which was incident to a decree which comes within the scope of section 22 (k), and that, therefore, the payments are taxable to the petitioner. Under this holding the petitioner does not dispute liability for tax on $12,000 monthly payments for 1945 which she received in 1945.

*Issue 2.* The petitioner contends that the arrearages in the payments amounting to $36,000 for the three years 1942–1944, inclusive, should not be taxed in the year of receipt—1945. The argument of the petitioner appears to be derived from section 29.22 (k)–1 (*a*) of Regulations 111, p. 82,[6] which provides that under section 22 (k) periodic payments are includible in the wife's income "only for the taxable year in which received by her," but if the payments are made by an estate or trust, then the *taxable year* of the wife in which the periodic payments are to be included in gross income shall be determined "according to the rules as to income of estates and trusts provided in sections 162, 164, and 171 (b)."

The petitioner's argument under this issue not only is not clear but is elusive. The petitioner has not contended in this proceeding that Parsons created a trust; no question on the point is presented by the pleadings. If that is what the petitioner intended to suggest in the argument presented under this issue, we may not consider such question because it was not pleaded. *John Gerber Co.*, 44 B. T. A. 26, 31; *Maltine Co.*, 5 T. C. 1265, 1275; *Maurice P. O'Meara*, 8 T. C. 622, 628. It should be noted, nevertheless, that Parsons retained title to the stock deposited with the bank under the escrow agreement. In *Reginald B. Parsons*, 44 B. T. A. 1142, 1159, this Court concluded with respect to the same agreement that Parsons made only an irrevocable assignment of part of his income from dividends of the deposited stock. There is no evidence in this proceeding that the bank regarded the escrow agreement as creating a trust, or that it filed fiduciary income tax returns reporting dividends on the deposited stock. The bank, under the escrow agreement, was an agent of Parsons which was to collect dividends and pay $1,000 per month from them to the petitioner. The bank was a conduit through which the payments passed from Parsons to the petitioner. We must reject the suggestion on brief that $12,000

---

[6] Sec. 29.22 (k)–1. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS—INCOME TO FORMER WIFE—(*a*) *In General.*—

\* \* \* \* \* \* \*

Periodic payments are includible in the wife's income under section 22 (k) only for the taxable year in which received by her. As to such amounts, the wife is to be treated as if she makes her income tax returns on the cash receipts and disbursements basis, regardless of whether she normally makes such returns on the accrual basis. However, if the periodic payments described in section 22 (k) are to be made by an estate or trust, such periodic payments are to be included in the wife's taxable year in which they are includible according to the rules as to income of estates and trusts provided in sections 162, 164, and 171 (b), whether or not such payments are made out of the income of such estates or trusts.

in the 3 years 1942–1944 was taxable in those years to the bank, and we emphasize that the theory behind the suggestion is far from clear.

On the other hand, the provisions of the regulation which the petitioner cites, section 29.22 (k)–1 of Regulations 111, are clear. First, the statutory plan of taxing "alimony" payments embraced by sections 22 (k) and 23 (u) should be recalled and reference made to the regulation under section 23 (u), section 29.23 (u)–1. Under the statutory provisions the *year* of the wife in which the periodic payments must be included and the *year* of the husband in which he may take deduction for the payments is the *year of the actual payment*, even though either or both the wife and the husband report income on an accrual basis. However, if the periodic payments are made by an estate or trust, the *year* of the wife in which the periodic payments shall be included, shall be (referring now to section 162 (b), for example) the year in which the payments are "to be distributed currently" by the fiduciary, whether distributed or not. Therefore, the year of the wife for the inclusion of periodic payments to be paid to her by a trust will be the year in which she constructively receives the payments, and this is an exception to the rule that the year of tax shall be the year of actual payment and receipt.

In this proceeding the exception to the general rule under section 22 (k) relating to the year of the tax to the wife does not apply because, first, 1945 was the year of payment and receipt; and second, we do not determine that the periodic payments were made by a trust. But, *arguendo*, if there had been a trust, the petitioner would encounter the obstacle which the pending Illinois litigation presented to any claim of constructive receipt of the payments in any of the years 1942–1944. In each of those years, the petitioner's right to receive the periodic payments was contested by Parsons in his counterclaim that the Berlin contract was invalid, and until that question was finally, judicially determined, petitioner's right to receive the periodic payments was undetermined. Such was the status of her claim throughout the years 1942–1944. She did not receive constructively any of the payments in those years. *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417. During those years, $12,000 of dividends was at least held in escrow in each year, or was impounded, pending decision of the conflicting claims of Parsons and the petitioner.

It is held that the arrearages for 1942–1944 amounting to $36,000 are includible in petitioner's income for 1945. The result reached here is no different from that reached in *Elsie B. Gale*, 13 T. C. 661 (Issue 1), affd. (C. A. 2, 1951) 191 F. 2d 79, and *Estate of Sarah L. Narischkine*, 14 T. C. 1128, affd. (C. A. 2, 1951) 189 F. 2d 257, where the year of the wife for including arrearages in periodic payments was the year when payment in one sum was made. The result reached

357

in this proceeding is not as harsh as at first it may seem because the petitioner is entitled to deduction in 1945 of $22,276, nonbusiness expense, for attorneys' fees and the costs of the litigation through which the petitioner's right to receive the payments was established.

Reviewed by the Court.

*Decison will be entered under Rule 50.*