Marriner S. Eccles, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 32823.    Promulgated March 11, 1953.

*Randolph E. Paul, Esq.*, and *Walter J. Rockler, Esq.*, for the petitioner.

*E. M. Woolf, Esq.*, for the respondent.

OPINION.

HILL, *Judge:* The sole issue presented by the parties for our consideration in this proceeding is whether or not the petitioner was entitled to file a joint return with Maysie Y. Eccles for the taxable year ending prior to the date upon which he became finally divorced.

Section 51 (b) of the Internal Revenue Code, sets forth the applicable law on this question and provides as follows:

SEC. 51. INDIVIDUAL RETURNS.

(b) HUSBAND AND WIFE.—

(1) IN GENERAL.—A husband and wife may make a single return jointly. Such a return may be made even though one of the spouses has neither gross income nor deductions. If a joint return is made the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several.

\*     \*     \*     \*     \*     \*     \*

(5) DETERMINATION OF STATUS.—For the purposes of this section—

(A) the status as husband and wife of two individuals having taxable years beginning on the same day shall be determined—

(i) if both have the same taxable year—as of the close of such year; and

(ii) if one dies before the close of the taxable year of the other—as of the time of such death; and

(B) an individual who is legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married.

The critical language of the statute is found in subsection (b) (5) (B) of section 51, "an individual who is legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married," for purposes of filing a joint return.

It is plain that whether the petitioner here meets the basic test imposed by the language set forth above depends upon his marital status as determined by state law for the marital relation. Marriage, its existence and dissolution, is particularly within the province of the states. Since this is so, an examination of the decree here in question is essential to the proper decision of this case. The decree is seen at once to be an interlocutory decree. Generally it is recognized that an interlocutory decree does not and can not terminate the matrimonial status of the parties. The Restatement of Conflict of Laws [1] states that after an interlocutory decree of divorce has been granted neither party ceases to be married until the lapse of the given time. However, we must look to the laws of the State of Utah to finally determine the marital effect of the decree entered here between Marriner S. and Maysie Y. Eccles. See *Gilbert B. Hay*, 13 T. C. 840. If the decree operated as a decree for separate maintenance or of divorce, the respondent must prevail, for as the petitioner must agree the parties to it were legally separated.

Under the laws of the State of Utah an interlocutory decree does not end the matrimonial status of the parties, nor destroy the economic and social incidents inherent in marriage. *In re Johnson's Estate*, 35 P. 2d 305, 84 Utah 168; *Hendrich* v. *Anderson*, 191 F. 2d 242.

After the entry of an interlocutory decree but before it becomes absolute, the wife retains full rights to inherit from the husband's estate in intestacy. Utah Code Ann. (1943), 101-4-3, 101-4-4, 101-4-5. She is also entitled to secure letters of administration for the husband's estate. Utah Code Ann. (1943), 102-4-1; *In re Johnson's Estate, supra*. An attempted marriage to a third person during the interlocutory period is null and void and the rights of the original spouse continue. Utah Code Ann. (1943), 40-1-2 (7), 40-3-8; *Jenkins* v. *Jenkins*, 153 P. 2d 262, 107 Utah 239; *Sanders* v. *Industrial Commn.*, 230 P. 1026, 64 Utah 372. And it would seem that while the interlocutory decree is in effect and before it becomes final, one spouse is not qualified to testify against the other without consent or waiver. See *State* v. *Musser*, 175 P. 2d 724, 736-737, 110 Utah 534.

---

[1] Restatement, Conflict of Laws, section 130, comment a (1934).

557, where the court in ruling a woman's testimony competent declared: "Her divorce * * * had become final prior to the date of the trial so that she was no longer the wife of said Smith."

The principles of Utah law with which we are here concerned are illustrated in the case of *In re Johnson's Estate*, *supra*, where after an interlocutory decree of divorce had been granted, but before the final decree, the husband died. The wife thereupon claimed the right to letters of administration as well as a widow's inheritance rights. The court recognized that the interlocutory decree did not destroy her status and held the divorce action was abated by the husband's death and further that the support payments provided in the interlocutory decree did not affect her rights to inheritance.

Similarly, the Court of Appeals in dealing with Utah law in the case of *Hendrich* v. *Anderson*, *supra*, passed upon the question of whether a second "wife" was the "widow" of the insured under a National Service Life Insurance policy. The insured's first wife had secured an interlocutory decree of divorce in Utah. Within the interlocutory period the insured "married" the second "wife" while on a 1-day visit to Idaho. Upon returning to Utah he continued to live with his second "wife" after the interlocutory period had expired. Applying the law of Utah, the court held that the marriage to the second wife was void *ab initio*.

It is plain then that during the calendar year 1949 the petitioner and Maysie were husband and wife despite the granting of an interlocutory decree of divorce by the Utah court on August 2, 1949. They were not then legally separated under a decree of divorce. Thus the petitioner passes the first basic requirement of section 51 (b) for filing join returns.

Were they then legally separated under a decree of separate maintenance? Like the term "decree of divorce," the term "decree of maintenance" is a term of art and carries with a definitive legal meaning.

Fundamental differences in the nature of the action brought and the relief requested exist in suits for divorce in which an interlocutory decree may be entered and suits for separate maintenance, and on the face of it the decree here involved looked towards a final divorce, not a decree of separate maintenance. The law of Utah, which is controlling in this proceeding, illustrates some of the distinctions. Suits for divorce and for separate maintenance are treated in entirely separate chapters of the Utah Code.[2] The decree before us conforms to the requirements in the chapter on divorce. Procedural differ-

[2] For divorce actions see Utah Code Ann. (1943), Title 40 (Husband and wife) Chap. 3 (Divorce). For actions of separate maintenance see Utah Code Ann. (1943), Title 40, Chap. 4 (Separate Maintenance).

ences also exist between the two actions. Venue for divorce action lies in the county where the wife resides, while venue for an action of separate maintenance may be either in the county where the wife resides or in any county in which the husband may be found. See Utah Code Ann. (1943), 40–4–2, 40–3–1.

No provision was made in the decree here involved for support or separate maintenance of any kind, nor did Maysie Y. Eccles request support or maintenance. It would appear then that the parties were not legally separated under a decree of separate maintenance.

The respondent bases his position in opposition to the petitioner upon the legislative history of section 51 (b), specifically upon the following language found in S. Rept. No. 1013, 80th Cong., 2d Sess., 1948–1 C. B. 285, 324:

> Section 25 (b) (2) of the Code, as amended by this section of the bill, corresponds to section 25 (b) (2) of existing law and relates to the determination of martial status for the purposes of the credits provided with respect to a spouse in section 25 (b). Section 25 (b) (2) provides two rules. The first rule is that the determination of whether an individual is married is to be made as of the close of his taxable year, unless his spouse dies during the taxable year of such individual, in which case such determination shall be made as of the time of such death. This rule is, in substance, the same as that provided for in existing law for the purposes of section 25 (b). The second rule is that an individual legally separated (although not absolutely divorced) from his spouse under a decree of divorce or of separate maintenance shall not be considered as married. Similar rules for the determination of status are provided in section 23 (aa) (6) of the Code (as added by section 302 (c) of the bill), relating to the standard deduction, and in section 51 (b) (5) of the Code (as added by section 303 of the bill) relating to joint returns. A uniform construction of all these provisions is intended. The rule with respect to the marital status of an individual legally separated from his spouse under a decree of divorce or of separate maintenance is derived from a corresponding provision in section 22 (k) of the Code, relating to the tax treatment of alimony and like payments.

This language can hardly be regarded as a Congressional directive regarding interlocutory decrees issued by the courts of Utah. However, in regulations explaining the meaning of this same language as it occurs in section 22 (k) of the Internal Revenue Code, the respondent has made it plain that a decree of divorce refers to a final decree and the word "final" is hardly used inadvertently for these regulations repeat its use several times. See Regulations 111, section 29.22 (k)–1 (a), examples (1) and (2).

The uniformity of construction requested by Congress in the language quoted above and supported by the respondent in the regulations mentioned will receive no injury by our holding here. However, if the respondent were to here prevail problems of inconsistency with the language of the estate tax "marital deduction" provisions

under section 812 (e) of the Code immediately arise. For assuming that the petitioner here had died on December 31, 1949, leaving no will, it can not be doubted that under the law of the State of Utah Maysie Y. Eccles would have inherited a substantial part of the petitioner's estate. And under section 812 (e) (3) of the Code the value of the interest in property so acquired by Maysie Y. Eccles would pass from the decedent to his "surviving spouse." Yet, according to the respondent, the petitioner and Maysie Y. Eccles had been divorced by means of an interlocutory decree for more than 5 months and are no longer entitled to file returns jointly as husband and wife. Yet, surely on the facts assumed, a marital deduction would be proper, taken against the estate tax.

Our ruling here is consistent with our holdings under the sections mentioned in the Senate Report. Under sections 22 (k) and 23 (u) taxpayers have frequently contended that alimony *pendente lite* must be treated like alimony awarded after a final decree of divorce. However, as we have observed "from a careful reading of the language it is apparent that Congress did not intend to include under this section any payment which may be called 'alimony'." See *George D. Wick*, 7 T. C. 723, 728, affd. 161 F. 2d 732, and *Robert A. McKinney*, 16 T. C. 916. Similarly, the occurrence of the words "decree" and "divorce" in the phrase "interlocutory decree of divorce" does not convert the mere interlocutory court order into a determination dissolving the matrimonial status. We have looked to the actual effect of a judicial action in determining what constitutes a decree of divorce. Thus, in considering a decree entitled a "decree of annulment," we have found the provisions of sections 22 (k) and 23 (u) satisfied, for in fact the decree of annulment was under the law of the proper jurisdiction a decree of divorce. *Lily R. Reighley*, 17 T. C. 344. Analysis, in contrast to a mere reliance on labels, is decisive. We hold that the petitioner and Maysie Y. Eccles were husband and wife on December 31, 1949, within the meaning of the provisions of section 51 of the Code.

*Decision will be entered for the petitioner.*