570

GEORGE F. REISMAN AND EVELYN REISMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

FREDRICKA K. REISMAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2809–63, 5258–65. Filed February 29, 1968.

*Edwin Fradkin*, for the petitioners in docket No. 2809–63.
*Irving H. Lessen*, for the petitioner in docket No. 5258–65.
*Alan M. Stark*, for the respondent.

OPINION

The principal issue for our consideration is whether periodic payments made by George to Fredricka from 1958 through 1962 under a New York annulment decree qualify as alimony under section 71(a)(1)[3] so as to be includable in Fredricka's gross income and deductible by George under section 215(a).

Respondent and Fredricka argue, under a strict construction theory, that section 71(a)(1) is inapplicable because it contains no reference to support payments made under an annulment decree. The answer is simply that this Court is not bound by the New York court's characterization of its decree. In determining that an interlocutory decree of divorce was not a "decree of divorce" under section 51(b)(5)(B), I.R.C. 1939, this Court recognized in *Marriner S. Eccles*, 19 T.C. 1049, 1051 (1953), affirmed per curiam 208 F. 2d 796 (C.A. 4, 1953), that marital status should be determined by State law for the marital relation, but also that we must look to the actual effect of a judicial action in determining what constitutes a decree of divorce. "Analysis, in contrast to a mere reliance on labels, is decisive" (p. 1054). While we agree that substantive determinations of marital status by State courts may be binding on this Court, it is equally clear that the characterization of actions concerned with the relationship under State law does not govern the construction of the language of a Federal tax statute. *Lyeth* v. *Hoey*, 305 U.S. 188. We believe the Federal statute here involved is more concerned with the function of the payments rather than the label of the action under which they were decreed.

Accordingly, after a review of New York statutes and cases, we conclude that the support payments made by George were "alimony payments" within the purview of section 71(a)(1). Under New York

---

[3] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

law marriages induced by fraud are merely voidable and are valid for all purposes until judicially declared void. N.Y. Dom. Rel. Law, sec. 7; *Hahn* v. *Gray*, 203 F. 2d 625 (C.A. D.C., 1953). In *Gaines* v. *Jacobsen*, 308 N.Y. 218, 124 N.E. 2d 290, 294 (1954), the New York Court of Appeals said:

The fiction that annulment effaces a marriage "as if it had never been" is sometimes given effect and sometimes ignored, as the "purposes of justice" are deemed to require. The courts and the legislature have, accordingly, attached to annulled marriages, for certain purposes, the same significance that a valid marriage would have, when a more desirable result is thereby achieved. Thus, although a distinction is sometimes made between void and voidable marriages, the annulled marriage has been given sufficient vitality to constitute valid consideration for a gift in contemplation of the marriage, see American Surety Co. of New York v. Conner, 251 N.Y. 1, 166 N.E. 783, 65 A.L.R. 244; to make a remarriage by one of the parties during its continuance bigamous, see McCullen v. McCullen, 162 App. Div. 599, 147 N.Y.S. 1069; and, by statute in this state, to legimatize [sic] any children born of the union, Civ. Prac. Act, § 1135.

The support payments provided for by the decree in issue here were authorized by the New York Civil Practice Act, sec. 1140–a, which was incorporated into and superseded by New York Domestic Relations Law, sec. 236 (1964), which now provides:

Sec. 236. Alimony, temporary and permanent

In any action or proceeding brought (1) during the lifetime of both parties to the marriage to annul a marriage or declare the nullity of a void marriage, or (2) for a separation, or (3) for a divorce, the court may direct the husband to provide suitably for the support of the wife * * *

The legislative history of section 22(k), I.R.C. 1939, progenitor of section 71, I.R.C. 1954, which was changed only to extend equal tax treatment to periodic payments under a written separation agreement, shows that section 22(k) applied "only where the legal obligation being discharged arises out of the family or marital relationship in recognition of the general obligation to support, which is made specific by the instrument or decree." H. Rept. No. 2333, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 428. Under New York law, George clearly had a general legal obligation, arising out of the family or marital relationship, to support his former wife and child which was made specific by the annulment decree. It is evident that this factual pattern falls within the ambit of section 71(a)(1).

The propriety of this approach is recognized in Rev. Rul. 59–130, 1959–1 C.B. 61, in which support payments under a New York annulment decree were determined to be includable in the gross income of the former wife under section 71(a)(1). The decree was based upon the wife's incurable insanity, apparently arising subsequent to the marriage. We do not, however, consider the time at which the grounds for annulment arise to be determinative, so long as a valid marital relationship exists for some period of time which gives rise to an obligation of

support and which is terminated by a decree specifically ordering support payments. In *Anne S. Laster*, 48 T.C. 178 (1967), and *Lily R. Reighley*, 17 T.C. 344 (1951), we held that support payments under a separation agreement received by a former wife after annulment of the marriage were includable in her gross income. In both cases the grounds for annulment arose before the marriage was consummated, and in both the local law provided for support payments in such instances. We said in *Anne S. Laster*, *supra* at 188:

Actually, in *Reighley*, as in the instant case, the annulment was granted because of personal "defects" existing in the husband prior to the marriage and the marriage under local law would have been considered a nullity or void from the outset and not merely from the date of the decree. *Lily R. Reighley*, *supra* at 346. Yet we held explicitly that the periodic payments under the support agreement were in discharge of a legal obligation which was incurred by the husband because of the marital relation. *Lily R. Reighley*, *supra* at 355.

In both the *Laster* and *Reighley* cases cited above we held that where, under local law, an annulment can have the same effect as a divorce for purposes of support, payments made pursuant to a support agreement incident to a decree of annulment are treated as alimony taxable to the recipient. We see no reason why this rule should not also apply to payments for support made payable by the decree of annulment itself.

Our conclusion on this basic issue raises the further question whether all or a portion of the periodic payments is excepted from the provisions of section 71(a) as a sum payable for the support of a minor child under section 71(b). The annulment decree provides, *inter alia:*

[It is ordered] that the defendant, George F. Reisman, shall pay to the plaintiff, Fredricka K. Reisman, the sum of Fifty ($50.00) Dollars per week for the support and maintenance of the plaintiff, Fredricka K. Reisman, and the said infant daughter, Lisa M. Reisman * * *.

It is plain that there is no "specifically designated" allocation to child support. Since the entire amount of each payment is at Fredricka's unfettered command, it is all includable in her gross income under section 71(a)(1). *Commissioner* v. *Lester*, 366 U.S. 299 (1961).

This determination is dispositive of George's right to deductions under the corollary section 215(a).[4] We therefore hold that the amounts includable in Fredricka's gross income are deductible by George in the year paid.

---

[4] SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

Finally, there is no question as to amounts paid under the annulment decree except in the year 1958. We find such payments amounted to $3,524.20 in 1958, which represents total payments of $3,674.20 less the $150 attributable to reimbursement for court costs incident to the contempt proceedings.

To reflect concessions by the parties and our findings and conclusions,

*Decisions will be entered under Rule 50.*