BARBARA (NEWBURGER) NEWMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Newman v. Commissioner
Docket No. 3434-71.
United States Tax Court
T.C. Memo 1974-45; 1974 Tax Ct. Memo LEXIS 274; 33 T.C.M. (CCH) 219; T.C.M. (RIA) 74045; February 21, 1974, Filed. Barbara (Newburger) Newman, pro se. Ronald A. Wagenheim, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent has determined the following deficiencies and additions to the Federal income tax of petitioner: Year
Deficiency
[1] Section 6654(a) 1965
$1,152.40
$32.27
1966
1,152.40
32.27
1967
1,152.40
36.88
1968
1,238.83
38.61
*275 The questions before the Court are as follows: (1) Whether certain payments received by petitioner from her former husband pursuant to a decree of annulment are includable in her gross income under section 71(a) (1) for each of the years in question. (2) If such payments are includable, whether respondent properly imposed additions to tax pursuant to section 6654 for each of the years in question. FINDINGS OF FACT Some of the facts have been stipulated by the parties. Such facts and the exhibits attached thereto are incorporated herein by this reference.
The legal residence of Barbara (Newburger) Newman (hereinafter referred to as "Barbara" or "petitioner") at the time of the filing of the petition herein was New York, New York. Petitioner did not file any Federal income tax returns for each of the taxable years 1965 through 1968. Barbara was first married in 1950 at the age of 18 years. She had a child by this marriage in 1952, but separated from her husband a month after the baby was born. Her husband subsequently obtained an ex parte Nevada divorce. *276 On December 30, 1955, she married Andrew M. Newburger (hereinafter referred to as "Andrew"). On April 2, 1958, Barbara, as plaintiff, instituted an action for separation against Andrew, as defendant, in the Supreme Court of the State of New York, County of Westchester, and thereupon applied for and obtained an order for temporary alimony in the sum of $200 per week. In fixing such sum, the court assumed that any amount paid to Barbara would be subject to Federal and state income taxes. Andrew responded to such action by interposing a counterclaim for annulment based on the invalidity of the divorce obtained by her first husband. The counterclaim was tried and a judgment and decree of the Supreme Court of the State of New York dated October 25, 1960, and duly entered in the office of the Clerk of Westchester County on October 31, 1960, was issued in Andrew's favor, granting the requested annulment. The counter-judgment decreed that "the marriage heretofore existing between the plaintiff and the defendant was at the inception and is, null and void * * *." It also directed a hearing to be held to determine the amount of permanent alimony which Barbara was entitled to receive under *277 the provisions of section 1140-a of the New York Civil Practice Act (now section 236 of the New York Domestic Relations Law). In the interim, she was to continue to receive $200 per week. The hearing on the issue of permanent support was held and a decision was entered on December 11, 1961. Pursuant to this decision, an order was made on January 18, 1962, amending the decree of annulment and directing Andrew to pay Barbara $150 per week for her support. This reduction in weekly payments was granted partially on the basis that such payments, now being made pursuant to an annulment order, would no longer fall within the scope of section 71 and thus would not be taxable to Barbara. She claimed otherwise, but Andrew's position which was based on Special Ruling, December 8, 1944, 454 CCH § 6092, and Rev. Rul. 59-130, 1959-1 C.B. 61, prevailed. After Andrew and Barbara separated, she and her son moved to a rural area in Connecticut where the rent was low and where she could provide a good home life for her child. In 1962, her income tax return for 1960 was audited by the Internal Revenue Service in Bridgeport, Connecticut, as a result of a refund claim filed for *278 such year on February 8, 1962. During the audit, a question arose as to the proper treatment of the support payments received from Andrew in 1960, although this was not the basis of the refund claim. During 1960, she received a total of $10,400 from Andrew, $8,500 of which was received prior to the annulment order on October 25, 1960. She showed the Bridgeport office copies of the memorandums which she and Andrew had submitted to the New York Supreme Court prior to its decision on December 11, 1961, to reduce Barbara's support payments. The Bridgeport office sent all the papers with respect to this issue to the district director in Hartford for his determination on the matter. On July 30, 1962, Barbara received a letter from the district director at Hartford attached to which was a report of the audit changes on her 1960 return and the proposed adjustments thereto. There was a written statement on the back of the audit report which explained the proposed adjustment in the following manner: Ann Barbara Newburger received during the year 1960 the sum of $200.00 a week ($10,400.00) from Andrew Newburger. The monies received prior to Oct. 25, 1960 were made pursuant to an order *279 (alimony pendente lite entered June 1958), $8,500.00 - monies received after Oct. 25, 1960 were paid pursuant to an annulment order. It was determined that monies received pendente lite is alimony under Sec. 71(a) (3) of the 1954 Internal Revenue Code.The balance of money received during 1960 is not alimony under Sec. 71(a) (3) of the above Code. Therefore is not taxable to Ann Barbara Newburger. Pursuant to the amended annulment decree, Barbara received the sum of $7,800 in each of the years 1965 through 1968. She did not, however, file Federal income tax returns nor pay any estimated tax for any of these years in reliance on the letter from the district director which indicated that the government did not view the payments she received pursuant to an annulment order as income to her under section 71. It was her honest belief that she had no obligation to file any returns for such years since, except for these annulment payments, she had no other source of income. She never thought to question a written determination of the Internal Revenue Service. Barbara did not hear from the Internal Revenue Service again until March 3, 1969, when an agent called asking if she had filed *280 a return for 1965. The agent expressed surprise when she responded in the negative since Andrew had told the agent that his support payments were based on a separation agreement and thus were deductible to him and taxable to her. In 1971, the respondent acquiesced to our decision in George F. Reisman, 49 T.C. 570 (1968), acq. 1971-2, C.B. 3, which held that support payments received under circumstances similar to those presently before us were taxable to the wife under section 71(a) (1). On March 5, 1971, the respondent sent a notice of deficiency to petitioner asserting deficiencies for the taxable years 1965 through 1968. OPINION On October 25, 1960, Andrew Newburger, petitioner's second husband, obtained an annulment decree from the Supreme Court of New York on the grounds that under New York law, petitioner was still married to her first husband at the time she purported to marry him. The decree declared the marriage void ab initio and directed that petitioner receive $200 per week in temporary alimony. Such sum was intended to cover any income tax petitioner would owe on the receipt of the award. *281 Subsequently, on January 18, 1962, after a hearing was held on the issue of permanent support, the court amended its annulment decree and pursuant to section 1140-a of the New York Civil Practice Act, directed that Andrew pay Barbara $150 per week in permanent support. This reduction in weekly payments was granted to Andrew after the court concluded that on the basis of Special Ruling, December 8, 1944, supra, and Rev. Rul. 59-130, supra, Barbara would no longer be required to pay income tax on her award. In Special Ruling, December 8, 1944, supra, the plaintiff wife was granted a decree of annulment based on the fact that her husband had a wife living at the time he purported to marry her. It held that periodic payments made pursuant to a decree of annulment, where the marriage was void ab initio, were not alimony under section 22(k) of the 1939 Code, the predecessor to the present section 71. In Rev. Rul. 59-130, supra, the husband obtained a decree of annulment based on the wife's incurable insanity, a condition which arose subsequent to the marriage. The effect of the decree was prospective only. The ruling held that periodic payments made pursuant *282 to such annulment decree were alimony within section 71(a) (1) since under state law, the annulment action was considered to be comparable to an action for divorce. The ruling, however, distinguished this situation from one involving a decree of annulment, where the marriage was void or voidable at its inception. In 1962, Barbara's income tax return for 1960 was audited as a result of a refund claim filed for such year which was based on a matter unrelated to the issue now before us. During the audit, the question of her support payments arose. Barbara took the position that these payments were not includable in her income under section 71(a) (1), citing Special Ruling, December 8, 1944, supra, and Rev. Rul. 59-130, supra, as her authority. On July 30, 1962, she received a letter from the district director at Hartford reflecting certain audit changes on her 1960 return and proposed adjustments thereto. On the back of the audit report there was a written statement declaring that the support payments made to her pursuant to the annulment were not taxable to her. In reliance on such advice she filed no income tax returns from that time forward. [2] In 1971, respondent *283 asserted deficiencies against her for the taxable years 1965 to 1968 on the basis that the support payments were taxable to her. As a matter of law, the support payments paid to petitioner in each of the years in issue are taxable to her under section 71(a) (1). In our decision in Andrew M. Newburger, 61 T.C. (January 14, 1974), which involved the same facts as this case, we held that the payments in question were deductible by the husband. [3]
Whether the respondent should in good conscience be permitted retroactively to assess deficiencies against the petitioner presents a more difficult question. The Court recognizes that the Commissioner cannot, except as provided by statute, be estopped from altering its position on mistakes of law in the interpretation and administration of the income tax laws. *284 Knapp-Monarch Co. v. Commissioner, 139 F.2d 863 (C.A. 8, 1944). We also recognize that different rules are applied to the Commissioner's actions in reaching a particular result. For instance, the government cannot be precluded - as might a private party - from taking advantage of a situation created by his own mistake. Automobile Club v. Commissioner, 353 U.S. 180 (1957). In enforcing our income tax laws, however, there is an obligation on the part of the government, regardless of the legalities of the situation, to treat all its citizens alike. This is of particular concern in the assessment of the income tax. Cf. Sirbo Holdings, 476 F.2d 981 (C.A. 2, 1973), vacating and remanding 57 T.C. 530 (1972). In Automobile Club, supra, the Commissioner had issued rulings in 1934 and 1938 declaring that the petitioner was exempt from income tax as a "club" under the predecessor to section 101(9) of the 1939 Code. In 1945, he retroactively revoked his rulings to the year 1943. He could have assessed deficiencies for years earlier than 1943 since petitioner, in reliance on the Commissioner's rulings, had not filed a return *285 dating back to 1933. He refrained from doing so, however, since it was in 1943 that he first changed his position with respect to the exempt status of petitioner. Recently, the Internal Revenue Service issued several advance revenue rulings dealing with the taxability of political organizations, including the national committees. [4] One such ruling indicated that political organizations would be taxable on the gain from the sale of appreciated property received as contributions. See Advance Rev. Rul. 74-21, I.R.B. 1974-2. In view of its prior practice, however, the Internal Revenue Service ruled that it would not assess deficiencies with respect to such sales occurring before October 3, 1972. Prior to such announcement, the Internal Revenue Service had tacitly accepted the claim that such organizations were exempt from the tax. It is thus clear that, prior to his acquiescence in *286 George F. Reisman, supra, the respondent held to the position that support payments made pursuant to a decree of annulment, the grounds for which arose prior to the marriage, did not fall within the ambit of section 71(a) (1). Petitioner had been so advised in 1962 and in reliance thereon, did not file returns in subsequent years. It is equally clear that the respondent has the power within his discretion to determine when and to what extent a change in his rulings should be applied retroactively. Section 7805. While generally speaking the courts will refrain from challenging the exercise, or nonexercise, by the respondent of this discretionary authority, this does not mean that his discretion is absolute. See Dixon v. United States, 381 U.S. 68 (1965). We believe that this is a case with respect to which the respondent should have exercised such discretion in favor of the taxpayer. Acting in good faith, and upon the basis of the position then being maintained by the respondent, in the annulment proceedings the petitioner settled for a monthly payment predicated on respondent's ruling that she would not be subject to tax. She received less than she *287 would otherwise have received on that assumption. There is thus more involved in this case than the naked question whether the respondent should be permitted to apply retroactively a change in position which resulted from the unsuccessful litigation of other cases. The respondent's position, which petitioner accepted as the law, resulted in a monetary loss to the petitioner. At this late date, she cannot be made whole. On these facts it would be grossly inequitable to permit the Government retroactively to assess deificiencies in the years before us. Petitioner should be accorded the same consideration and treatment from the Government as the Automobile Club of Michigan and the national committees. The result reached here is wholly in accord with the respondent's policy of encouraging taxpayers to rely on its published rulings. Section 601-201(1) (9), Proced. and Admin. Regs., provides, in pertinent part, as follows: (9) Taxpayers generally may rely upon Revenue Rulings published in the Internal Revenue Bulletin in determining the tax treatment of their own transactions and need not request specific rulings applying the principles of a published Revenue Ruling to the facts *288 of their particular cases. However, since each Revenue Ruling represents the conclusion of the Service as to the application of the law to the entire state of facts involved, taxpayers * * * are cautioned against reaching the same conclusion in other cases unless the facts and circumstances are substantially the same. * * * There is no question of justifiable reliance in our case where the petitioner's interpretation of Rev. Rul. 59-130, supra, as applied to her facts, was reaffirmed by the district director at Hartford. The nature of our income tax system is one of self-assessment. Its very foundations rest upon the continued goodwill and cooperation of our citizens in voluntarily disclosing their taxable income. Such cooperation will not long be forthcoming if the tax laws are not administered in an equitable and evenhanded manner. The respondent can ill-afford to violate the people's trust by applying one standard to the large taxpayer and another to the small taxpayer. As Justice Douglas said in his Concurring Opinion in *289 Commissioner v. Lester, 366 U.S. 299, 306 (1961): * * * In an early income tax case, Mr. Justice Holmes said "Men must turn square corners when they deal with the Government." Rock Island, A. & L.R. Co. v. United States, 254 U.S. 141, 143. The revenue laws have become so complicated and intricate that I think the Government in moving against the citizen should also turn square corners. In accordance with the above, Decision will be entered for the petitioner. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Aside from the support payments, petitioner had no other income which would have required her to file tax returns for the years in question. ↩
3. This was a situation in which respondent, facing litigation with respect to prior rulings, chose to litigate both sides of the question in the guise of a stakeholder. ↩
4. The Internal Revenue Service has indicated that these rulings are designed to provide a clear understanding of the rules that will be applicable if Congress does not choose to enact statutory provisions requiring different results. ↩