T.C. Memo. 2017-236

UNITED STATES TAX COURT

GARY A. WOLENS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10853-15.                              Filed November 27, 2017.

<u>Anson H. Asbury</u>, for petitioner.

<u>Ashley Y. Smith</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, <u>Judge</u>:  In a notice of deficiency dated February 5, 2015, respondent

determined that petitioner had a deficiency of $183,864 for the 2009 tax year.[1]

_____

[1] All section references are to the Internal Revenue Code in effect for the
year(s) in issue, and all Rule references are to the Tax Court Rules of Practice and
Procedure, unless otherwise indicated.  All monetary amounts are rounded to the
nearest dollar.

**[*2]**                       FINDINGS OF FACT

The stipulated facts are so found. Petitioner resided in the United Kingdom when the petition was timely filed. Petitioner married his now ex-wife in 1986 in New York, and they moved to the United Kingdom about a month after they were married. They have four children, all of whom are now adults.

Petitioner and his ex-wife were divorced on January 24, 2006, pursuant to a divorce order issued under English law.[2] Paragraph II of the divorce order states that petitioner agrees to "co-operate with, including making himself available for any necessary medical examination, the obtaining by * * * [petitioner's ex-wife] * * * of life insurance on his life sufficient to secure the payments due to * * * [petitioner's ex-wife] * * * under § 5.c-5.e in the event of his death."

Sections 1 through 3 of the divorce order address the potential sale of the marital home and the division of the proceeds of that sale. Section 4 of the divorce order divides certain items of personal property between petitioner and his ex-wife. Section 5 orders:

5. [Petitioner] * * * is to pay the following lump sum payments to
* * * [petitioner's ex-wife]:

---

[2] The order in the record is not the divorce order but the order for financial provision issued by the English court. We nonetheless will adopt the parties' label of divorce order.

[*3]   a. £1,000,000 by 15 February, 2006;

b. £2,300,000 upon the payment date;[3]

c. £441,667 by 15 April, 2007;

d. £441,667 by 15 April, 2008;

e. £441,666 by 15 April, 2009.

Section 6 of the divorce order states that petitioner must transfer certain retirement accounts to his ex-wife, along with half of their frequent flier miles. Section 10 of the divorce order states:

> Save as aforesaid * * * all of the claims of [petitioner's ex-wife] against [petitioner] and of [petitioner] against [petitioner's ex-wife] for any sort of provision in respect of this marriage shall stand dismissed and neither would be entitled to apply for an order under the Inheritance (Provision for Family and Dependents) Act 1975 even if, by the date of their death, the other party had become domiciled in England or Wales (neither being so domiciled at present).

Petitioner made the payments as required by the divorce order. Only the final payment of £441,666 or $650,088 is at issue.

Petitioner timely filed his Form 1040, U.S. Individual Income Tax Return, for the 2009 tax year and claimed an alimony paid deduction of $650,088 for the £441,666 he paid to his ex-wife in 2009 pursuant to the divorce order. The notice

---

[3] The payment date is defined as the date on which petitioner sold the marital home to a third party or on which he purchased his ex-wife's interest in the marital home in lieu of selling it to a third party.

**[*4]** of deficiency denied petitioner's alimony paid deduction for the 2009 tax year, resulting in a deficiency in income tax of $183,864. The only issue for decision is whether petitioner's payment constituted alimony under section 71(b).

OPINION

I. Burden of Proof

Ordinarily, the taxpayer bears the burden of proving that the Commissioner's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The taxpayer, thus, must prove his entitlement to any deductions claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

II. Alimony Paid Deduction

Amounts paid as alimony are included in the gross income of the payee spouse under section 71(a) and are deductible to the payor spouse under section 215. Alimony is defined in section 71(b)(1) as any payment in cash that meets four requirements. The parties agree that the first three elements of the section 71(b)(1) definition of alimony payments have been met. They contest only whether the lump-sum payments satisfy section 71(b)(1)(D): that "there is no liability to make such payment for any period after the death of the payee spouse

**[\*5]** and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse." Section 71(b)(1)(D) "is central to Congress's intended distinction between support and property settlements." Hoover v. Commissioner, 102 F.3d 842, 846 (6th Cir. 1996), aff'g T.C. Memo. 1995-183. Thus, we must determine whether petitioner's obligation to make the lump-sum payments would have continued after the death of his ex-wife.

To answer this question, we first look to the divorce order to determine whether a postdeath obligation exists. Rood v. Commissioner, T.C. Memo. 2012-122. If the divorce order is silent, the payments may meet the requirement of section 71(b)(1)(D) if they terminate upon the payee's death by operation of State law. Johanson v. Commissioner, 541 F.3d 973, 977 (9th Cir. 2008), aff'g T.C. Memo. 2006-105; Hoover v. Commissioner, 102 F.3d at 846. However, "a federal court will not engage in complex, subjective inquiries under state law". Hoover v. Commissioner, 102 F.3d at 846. If State law is ambiguous as to whether payments terminate upon the payee's death, "the court will read the divorce instrument and make its own determination based on the language of the document." Id. at 846.

**[*6]**   A.  <u>Governing State Law</u>

The parties agree that the divorce order is silent as to the existence of a postdeath obligation.  Therefore, we must determine whether a postdeath obligation existed under State law.  The parties dispute which State law governs.  Petitioner contends that it is the law of the marital domicile--New York law, whereas respondent contends that it is the law of the jurisdiction that issued the divorce decree--English law.

Petitioner bases his argument in our caselaw holding that the determination of marital status must be made according to the law of the marital domicile.  <u>See</u> <u>Boyter v. Commissioner</u>, 74 T.C. 989 (1980), <u>remanded</u>, 668 F.2d 1382 (4th Cir. 1981); <u>Dunn v. Commissioner</u>, 70 T.C. 361 (1978), <u>aff'd</u>, 601 F.2d 599 (7th Cir. 1979); <u>von Tersch v. Commissioner</u>, 47 T.C. 415 (1967); <u>Untermann v. Commissioner</u>, 38 T.C. 93 (1962); <u>Eccles v. Commissioner</u>, 19 T.C. 1049 (1953), <u>aff'd</u>, 208 F.2d 796 (4th Cir. 1953).  Because petitioner and his ex-wife were married in New York, petitioner argues that it is the State of marital domicile.  Petitioner also argues that he and his ex-wife remained domiciled in New York and not the United Kingdom.

Although the parties dispute domicile, neither party is challenging the validity of the divorce.  We, therefore, conclude that the law of the marital

[*7] domicile is not the law that we must interpret.[4] Section 71 requires us to interpret the divorce order. See Rood v. Commissioner, slip op. at 9-10. The divorce order was issued under English law, as petitioner acknowledged. We, therefore, will apply English law to determine the rights and obligations created by the English court's order. Kean v. Commissioner, 407 F.3d 186, 191 (3d Cir. 2005) (applying New Jersey law to conclude that "[a] support order issued pendente lite in a New Jersey divorce proceeding does not survive the death of the payee"), aff'g T.C. Memo. 2003-163; see also Lovejoy v. Commissioner, 293 F.3d 1208, 1210 (10th Cir. 2002) (applying Colorado law to payments made pursuant to a divorce made under Colorado law), aff'g Miller v. Commissioner, T.C. Memo. 1999-273; Hoover v. Commissioner, 102 F.3d at 847 (applying Ohio law to payments made pursuant to a divorce made under Ohio law); Muniz v. Commissioner, T.C. Memo. 2015-125 (applying Florida law to payments made pursuant to a divorce under Florida law), aff'd, 661 F. App'x 1027 (11th Cir.

_____

[4] Petitioner asserts that he has provided complete and conclusive documentation and credible testimony to shift the burden of proof under sec. 7491 with respect to his domicile. A taxpayer can shift the burden of proof under sec. 7491 with respect to an issue of fact relating to liability for tax under subtitle A or B. Sec. 7491(a). To do so, the taxpayer must introduce credible evidence with respect to that issue. Id. Because we do not decide this issue, petitioner's assertion is moot. We also note that we resolve this case on a question of law rather than a question of fact.

[*8] 2016); Hampers v. Commissioner, T.C. Memo. 2015-27 (applying New Hampshire law to payments made pursuant to a divorce under New Hampshire law); Leventhal v. Commissioner, T.C. Memo. 2000-92 (applying New York law to a separation agreement made pursuant to a divorce under New York law); Human v. Commissioner, T.C. Memo. 1998-106 (applying Georgia law to payments made pursuant to a divorce under Georgia law).

We also reject petitioner's contention that the "State law" referred to in our analysis of section 71(b)(1)(D) means the law of one of the fifty States. We previously applied the law of a foreign country in determining the taxability of rights created by a divorce decree granted under the laws of that country. In Parsons v. Commissioner, 44 B.T.A. 1142, 1146, 1151 (1941), we applied Latvian law in determining whether trust income paid to the taxpayer's ex-wife discharged a legal obligation for the taxpayer to provide support for his ex-wife under a Latvian divorce decree. In Reighley v. Commissioner, 17 T.C. 344, 352-353 (1951), we applied German law in determining whether payments made pursuant to a German annulment were alimony. Because the divorce order was issued under English law, we must determine whether petitioner's obligation to make the 2009 payment would have terminated upon the death of petitioner's ex-wife under English law.

**[\*9]** B. <u>English Law on Divorce Payments</u>

The Matrimonial Causes Act 1973 (Act) governs divorce orders, separation agreements, and related orders for financial provisions in England and Wales. Section 21 of the Act defines "financial provision" as a "provision available * * * under section 23 below for the purpose of adjusting the financial position of the parties to a marriage * * * in connection with proceedings for divorce, nullity of marriage or judicial separation". Matrimonial Causes Act 1973, c. 18, sec. 21(1) (Eng.). Section 23(1) of the Act provides that the financial provision can take the form of periodical payments, secured periodical payments, or a lump-sum payment to the other spouse. A court also can direct more than one type of payment. <u>Id.</u> Section 23(3)(c) of the Act provides that a lump-sum payment can be made in installments. A court also has the power to amend financial provision orders for periodical payments, secured periodical payments, or a lump sum made in installments. <u>Id.</u> sec. 31. The divorce order at issue here is an order for financial provision and the payment at issue is a lump sum made in installments.

The Act expressly provides that periodical payments and secured periodical payments terminate upon the death of either party to the marriage and upon the remarriage of the payee spouse. <u>Id.</u> sec. 28(1). However, the Act is silent as to whether lump-sum payments terminate upon the death of a party. <u>See id.</u> In

[*10] construing acts of Parliament, English courts will presume that "the draftsman will use language in such a way that its meaning represents what Parliament means to say." Maunsell v. Olins, [1975] AC 373 (HL) (Eng.). Therefore, we conclude that the omission of lump-sum payments from section 28 of the Act--providing for termination of payments on the death or remarriage--was intended.

Our conclusion is supported by English caselaw, which distinguishes between periodical payments and a lump-sum payment:

> Of its nature a lump sum payment is once and for all. A lump sum payment represents, to that extent, the financial closure of a failed marriage. It draws a line under the past. Periodical payments represent the opposite. Future earnings and future payments lie in the future. They are a continuing financial tie between the parties.

Miller v. Miller/McFarlane, [2006] 2 AC 618 (HL) (Eng.).

Cases involving a "Barder event" also confirm our conclusion. In Barder v. Caluori, [1988] 1 AC 20 (HL) (Eng.), rev'd sub nom. Barder v. Barder, [1986] 3 WLR 145 (Eng.), the House of Lords decided to hear an appeal of an order for financial provision, even though the period for appeal had lapsed, after the husband's ex-wife killed their children and committed suicide only weeks after the order was handed down. Id. The House of Lords ruled that an untimely appeal would be allowed only if four conditions were met (relating to the timing of a

**[\*11]** subsequent event, prejudice, and the likelihood of success). <u>Id.</u> In so ruling, the House of Lords observed that, absent appeal, "[i]t was common ground that the wife's mother, as her personal representative, was entitled to enforce the \* \* \* order against her husband." <u>Id.</u> That is, the order was recognized to be enforceable after the death of the wife, in the absence of a successful appeal.

A later English court also interpreted a lump-sum payment made in installments as continuing after the death of the payee, in the absence of a successful appeal under <u>Barder v. Caluori</u>, in <u>Richardson v. Richardson</u>, [2011] EWCA Civ 79 (Eng.). In that case, the husband requested leave to make an untimely appeal of an order for financial provision in the form of a lump-sum payment made in installments. <u>Id.</u> The request was based on two grounds. First, his wife died of a heart attack a little more than a month after the order became final, at which point the husband had paid only half of the required installments. <u>Id.</u> Second, the business that the husband owned was facing a potential liability after a child was injured on the business' property. <u>Id.</u> The court declined to amend the order on the basis of the wife's death. "[I]t is not enough to show that one of the parties died unexpectedly very shortly after the hearing. What has to be shown \* \* \* is that the death 'invalidate[s] the basis, or fundamental assumption, upon which the order was made.'" <u>Id.</u> (quoting <u>Barder v. Caluori</u>).

**[\*12]** We conclude that petitioner's obligation to make the 2009 payment would not have terminated by operation of English law at the death of his ex-wife. Because we conclude that English law is not ambiguous, we need not review the divorce order to determine whether petitioner's obligation to make the 2009 payment would have terminated at his ex-wife's death.

Even if we were to conclude that English law is ambiguous, we find nothing in the divorce order that indicates that the payments would be terminated on the death of petitioner's ex-wife. Contrary to petitioner's argument, section 10 of the divorce order does not indicate that the payments terminate at the death of petitioner's ex-wife. Rather, it limits any claims of petitioner and his ex-wife against each other to the provisions in the order, which includes the lump-sum payment. We also do not view petitioner's agreement in paragraph II of the divorce order to cooperate with his ex-wife's obtaining life insurance on his life to secure payments to her as indicating that payments would terminate on her death. Finally, the lump-sum payments in section 5 of the divorce order in the context of the remaining provisions are more readily understood as a division of the couple's assets than as support payments. Sections 1, 2, 3, 4, and 6 of the divorce order all pertain to the division of property between petitioner and his ex-wife. We see no indication that section 5 of the divorce order was intended as anything else.

**[*13]** Indeed, the fact that the payments ceased after 2009 further suggests that they were part of the couple's property settlement.

Because petitioner's 2009 payment of £441,666 does not satisfy the requirement in section 71(b)(1)(D), petitioner is not entitled to an alimony paid deduction.

We have considered all arguments made and facts presented in reaching our decision, and, to the extent not discussed above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.